**BARRETTO PEAT, INC.,**
**Plaintiff, Appellant,**

v.

**LUIS AYALA COLON SUCRS., INC.,**
**Defendant, Appellee.**

**No. 89–1494.**

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1989.
Decided Feb. 27, 1990.

Juan A. Ramos Diaz with whom Cobian & Ramos, San Juan, P.R., was on brief, for plaintiff, appellant.

Jose F. Sarraga, San Juan, P.R., for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and PIERAS,* District Judge.

PIERAS, District Judge.

Barretto Peat, Inc. appeals from an order of summary judgment in favor of Luis Ayala Colón Successors, Inc., dismissing the complaint pursuant to Puerto Rico's one-year statute of limitations for tort actions, Civil Code Article 1868, 31 L.P.R.A. § 5298, and a similar limitations period provided by Section 1303(6) of the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C.App. § 1303(6). For the reasons indicated below we affirm.

## I. FACTUAL BACKGROUND

On October 12, 1986, plaintiff Barretto Peat, Inc. (Barretto), a New York corporation, sold to Papelera Puertorriqueña, Inc. (Papelera), a shipment of 728 reels of unbleached virgin pine paper to be delivered from Brazil to San Juan, Puerto Rico. Under the terms of the sale, the price for the goods was set at $105,599.96 and payment was due 90 days after delivery of the goods. The terms of delivery were "C.I.F. San Juan."[1] On October 12, 1986, the goods were delivered by the shipper, Industria de Papeis Santo Amaro (Industria Papeis) from a paper mill to the Brazilian port of Salvador. At the port, the ocean carrier Saguenay Shipping Limited (Saguenay) issued a bill of lading, originally endorsed by Barretto, to Industria Papeis, covering the goods to be carried to the port of San Juan. The terms of the contract of carriage between Saguenay and Industria Papeis were contained in this bill of lading and provided that upon delivery of the goods, the bill of lading would be surrendered in exchange for the goods.[2]

On October 23, 1986, the defendant, Luis Ayala Colón Sucrs., Inc. (Ayala), as stevedoring contractor and steamship agent of Saguenay, unloaded the cargo from the M/V Transhope and delivered it to Papelera in San Juan, Puerto Rico. However, upon delivery of the goods, Ayala failed to request the surrender of the bill of lading from Papelera. On July 22, 1988, Barretto filed its complaint against Ayala, alleging that delivery of the goods without the simultaneous surrender of the bill of lading constituted a conversion, because the failure to collect the bill of lading prevented Barretto from collecting the goods or the $105,599.96 due on them.

Ayala moved for dismissal on the grounds that the one-year statute of limitations under Puerto Rico law had elapsed. As an alternate ground, Ayala sought dismissal under Section 1303(6) of COGSA, which provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

## II. APPLICABLE STATUTE OF LIMITATIONS

◼ The general civil liability statute of Puerto Rico provides compensation for damages caused by a person's fault or negligence. Article 1802, 31 L.P.R.A. § 5141, states in relevant part: "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Under Article 1802, conversion is an intentional tort and "'is merely a form of the fault (culpa).'" *Federal Ins. Co. v. Banco Popular de Puerto Rico*, 750 F.2d 1095, 1100 (1st Cir.1983) (citing *Heirs of Sorbá v. Viñas*, 49 P.R.R. 31, 36 (1935)). As explained by the Puerto Rico Supreme Court, conversion is "not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights,

---

* Of the District of Puerto Rico, sitting by designation.

1. A C.I.F. contract is defined in Section 2–320 of the Uniform Commercial Code in the following terms:
   (1) The term C.I.F. means that the price includes in a lump sum the costs of the goods and the insurance and freight to the named destination....

2. Clause 8 of the Bill of Lading provides that "one signed Bill of Lading, duly endorsed must be surrendered in exchange for Delivery Order or the goods."

the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment." *Hull Dobbs Co. v. Superior Court*, 81 P.R.R. 214, 222 (1959). The facts as stated in appellant's complaint allege in effect that defendant's failure to collect the bill of lading was a wrongful deprivation of plaintiff's right to collect the goods or the $105,599.96 due on them. Therefore, the district court properly noted that the defendant's alleged act and/or omission could give rise to a finding of conversion governed by 31 L.P.R.A. § 5141. *Barreto (sic) Peat, Inc. v. Ayala Colón Sucrs.*, 709 F.Supp. 321 (D.P.R. 1989).

Article 1868 of the Puerto Rico Civil Code provides for a one-year statute of limitations for torts which commences on the date the aggrieved party had knowledge of the tort. 31 L.P.R.A. § 5298.[3] Barretto relies on the cognitive theory of damages as codified in Article 1868 in order to claim that its action was not time-barred. According to this theory, the one year "term does not start to run from the occurrence of the negligent act or damage, but from the moment the damage is known." *Rivera Encarnación v. Estado Libre Asociado de Puerto Rico*, 113 D.P.R. 383, 385, 13 T.P.R. 498 (1982). While this theory of damages establishes that the one-year statute of limitations commences on the date plaintiff becomes aware of the damage and who caused it, if the plaintiff's lack of awareness is due to its own negligence or carelessness, then the prescriptive period will begin to run on the date the alleged tort occurred. A victim is presumed to have knowledge of the injury at the time of the tortious act, and the victim has the burden of proving that he learned of the act at a later date. *Id.* at 385 (citing L. Diez Picazo, *La Prescripción en el Código Civil* 240 (Bosch ed.1964)). *See also* Brau del Toro, *Los Daños y Perjuicios Extra-*

*contractuales en Puerto Rico* § 8.06 (J.T.S. 2d Ed.1986).

We have previously stated that the specific knowledge of the tort in question consists of knowledge of the injury and the person who caused it. *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir.1987) (citing *Colón Prieto v. Géigel*, 115 D.P.R. 232, 247 (1984)). Appellant argues that it first learned of the failure to collect the bill of lading upon delivery of the goods and who was responsible for this failure on April 22, 1988. Barretto alleges that it conducted an investigation to determine what happened. The investigation culminated in a meeting with Ayala's representative on April 22, 1988. At this meeting, Barretto discovered that Ayala's files contained no letter of guaranty in lieu of the bill of lading.

However, Barretto has not adequately established that its lack of knowledge was not due to its own carelessness. According to the record, the alleged conversion occurred on October 23, 1986, when Ayala delivered the goods to Papelera without requiring the surrender of the original bill of lading. The terms of Barretto's invoice provided that Papelera's payment to Barretto was due 90 days after delivery of the goods. Therefore, by late January of 1987, Barretto should have known of the tortious act when Papelera did not make the payment according to the terms provided by the invoice. The record reflects no evidence of an attempt by Barretto to collect the sum of money due to it. Likewise, there is no evidence of any inquiries directed to any of the parties involved in the transaction until April 22, 1988. Because the appellant has not shown that its lack of knowledge was not due to its own negligence, the prescriptive period must be measured from the date the alleged tort occurred, October 23, 1986. The complaint however, was not filed until July 22, 1988. Therefore, the district court correctly

---

**3.** Article 1868 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5298, states in relevant part:

The following prescribe in one year:
(1) * * *

(2) Actions to demand civil liability for grave insults or calumny, and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.

found that Barretto's complaint alleging conversion was time-barred.

In the alternative, Barretto argues that the district court erred in dismissing the action, because it should have applied the fifteen year statute of limitations for actions based on breach of contract, Article 1864 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5294.[4] *See K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 n. 2 (1st Cir.1989) (Article 1864 establishes a fifteen-year prescriptive period for contract claims). According to Barretto, the original bill of lading issued by the ocean carrier, Saguenay, was a contract binding on Barretto, Saguenay, and Ayala, because Barretto endorsed the original bill of lading, Saguenay issued the bill of lading as carrier, and Ayala was Saguenay's agent. Ayala breached the bill of lading's clause requiring its surrender upon the delivery of the goods to Papelera when it failed to secure the bill after delivery.

Although Barretto's complaint did not state a contractual cause of action, it asserted that the complaint stated a claim for breach of contract in its opposition to Ayala's motion to dismiss. It now argues that the district court erred by not allowing leave to include a contract cause of action, as requested in its opposition to Ayala's motion to dismiss. However, even if Barretto's action had stated a contract claim, the district court properly dismissed the

complaint because of the application of COGSA.

## III.  APPLICATION OF COGSA

The COGSA applies when there is a contract for carriage of goods between a foreign port and a port of the United States. 46 U.S.C.App. §§ 1300, 1312.[5] *EAC Timberlane v. Pisces, Ltd.*, 745 F.2d 715 (1st Cir.1984). COGSA discharges the carrier and the ship from all liability for losses or damages unless "suit is brought within one year after delivery of the goods or the date when the goods should have been delivered...." 46 U.S.C.App. § 1303(6). *Insurance Co. of North America v. Puerto Rico Marine*, 768 F.2d 470 (1st Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). COGSA applies by its terms to the bill of lading in this case because it is a contract for the carriage of goods between a foreign port and a port of the United States.

The defenses and limitations of liability provided to a carrier under COGSA may be contractually extended to the carrier's servants or agents through what is known in the maritime trade as a "Himalaya Clause."[6] *EAC Timberlane*, 745 F.2d at 718 n. 5. A Himalaya Clause is an exculpatory or other beneficial clause in a bill of lading which extends the immunities or protections of the carrier to non-carriers. The validity of such clauses has been upheld in various Circuits. *See, e.g., B. El-*

---

**4.** 31 L.P.R.A. § 5294 provides:

A mortgage action prescribes after twenty years, and those [actions] which are personal and for which no special term of prescription is fixed, after fifteen years.

**5.** 46 U.S.C.App. § 1300 provides:

Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.

46 U.S.C.App. § 1312 provides in pertinent part: This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade.... [T]he term "United States" includes its districts, territories and possessions. The term "foreign trade" means the transportation of goods between the ports of the United States and ports of foreign countries.

**6.** The term is derived from an English case involving the vessel Himalaya. In that case, a ticket issued to a passenger for a Mediterranean cruise included an exonerating clause. During the cruise, the passenger suffered serious injuries as a result of an accident. However, due to the exculpatory clause printed on the ticket, the passenger's suit against ·the shipowner was barred. The plaintiff brought an action in negligence against the ship's master and boatswain. Defendants argued they were agents of the shipowner and the accident occurred as a result of their acts in the course of their employment. Therefore, they should have been entitled to the same protection as the shipowner under the terms of the ticket. The defendants' contention was unsuccessful because they were not specifically mentioned in the exculpatory clause. *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d 415, 417 n. 5 (5th Cir.1981).

liott (Canada) Ltd. v. John T. Clark & Son, Inc., 704 F.2d 1305, 1308 (4th Cir. 1983); Certain Underwriters at Lloyds' v. Barber Blue Sea Line, 675 F.2d 266 (11th Cir.1982); Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415, 423 (5th Cir.1981); Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934 (2d Cir.1972), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); Tessler Brothers (B.C.) Ltd. v. Italpacific Line, 494 F.2d 438, 446–47 (9th Cir.1974).

██ When the benefits of COGSA are contractually extended by a Himalaya Clause, the clause must be "strictly construed and limited to intended beneficiaries." Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 305, 79 S.Ct. 766, 771, 3 L.Ed.2d 820 (1959). The clause itself must clearly express the parties' intent to extend COGSA benefits to third parties. Id. The terms of the Himalaya clause are clearly expressed if the benefits are extended to a "well-defined class of readily identifiable persons." Barber Blue, 675 F.2d at 270. The clause need not refer to specific parties. For example, the parties' intent is clear when the bill of lading refers to "agents" and "independent contractors" who perform those functions and duties of the carrier within the scope of the carriage contract. Id. Cf. Generali v. D'Amico, 766 F.2d 485, 490 (11th Cir. 1985) (term "bailee" used in bill of lading is sufficiently clear in expressing intent to extend limitation benefits to stevedore/non-carrier); Bellmer Kg. v. Terminal Services Houston, 711 F.2d 622, reh'g denied, 718 F.2d 1096 (5th Cir.1983) (clause's reference to "independent contractors ... whose services the carrier ... may engage in" extends COGSA limitation of liability to stevedore hired by agent of carrier).

██ In this case, Saguenay's bill of lading contained a Himalaya Clause,[7] and Ayala claims protection under this clause as Saguenay's agent and stevedoring contractor. As such it asserts that the one-year COGSA statute of limitations applies. Although Ayala is not specifically mentioned in the bill of lading, Clause 17 refers to "agent." The contract's reference to "agent" must include Ayala as the stevedore, because it was engaged by Saguenay to deliver the goods to Papelera and was in the position to obtain the bill of lading upon delivery of the goods in accordance with the terms of the contract of carriage. Ayala was therefore acting within the scope of the carrier's contractual functions and duties. Accordingly, it is entitled to the benefits provided by the Himalaya clause, including the COGSA one-year statute of limitations.

██ Appellant's contention that clause 17's limitation of liability does not apply to the conduct in question because the goods in this case were not lost, damaged or delayed, is without merit. The clause states that "every exemption, limitation, condition and liberty ... and every right, exemption from liability defense and immunity ... applicable to the Carrier ... shall also be available ... to protect every such servant or agent...." Under COGSA, suits for "loss or damage" must be brought within one year after the delivery of the goods. 46 U.S.C.App. § 1303(6). A carrier's failure to collect the bill of lading in exchange for the goods is an improper delivery or misdelivery which constitutes a breach of the carriage contract subject to the COGSA one-year statute of limitations. See Allied Chemical v. Companhia de Navegacao, 775 F.2d 476, 481–82 n. 3 (2d

---

7. The relevant portion of Clause 17 of the bill of lading issued by Saguenay provides:

**Exemptions and Immunities of all Servants and Agents of the Carrier:**

\* \* \* \* \* \*

*every exemption, limitation, condition and liberty herein contained and every right, exemption from liability defense and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such*

*servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this Clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract in or evidenced by this Bill of Lading.* (Emphasis added.)

Cir.1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986) (absent valid agreement to contrary, carrier is responsible for releasing cargo only to party presenting original bill of lading; definition of proper delivery should logically include carrier's duty to ensure cargo released in exchange for bill of lading); *Timco Engineering, Inc. v. Rex & Co., Inc.,* 603 F.Supp. 925, 929 (E.D.Pa.1985) (in suit for misdelivery against stevedore, one year statute of limitations applies because of Himalaya Clause).

As agent of the carrier Saguenay, Ayala was performing a duty of the carrier when delivering the goods to Papelera. Its failure to collect the bill of lading in exchange for the goods was a misdelivery or improper delivery under terms of the contract of carriage between Saguenay and Papeis. As carrier, Saguenay is entitled to the one-year COGSA prescriptive period in a misdelivery suit against it. Because of clause 17, the Himalaya Clause, Ayala is also entitled to that limitation.

In conclusion, given the applicability of COGSA, Barretto cannot circumvent COGSA's operation by couching its complaint in terms of conversion or breach of contract. *See Miller Export Corp. v. Hellenic Lines, Ltd.,* 534 F.Supp. 707, 710–11 (S.D.N.Y. 1982) ("exclusive application of COGSA cannot be avoided by couching claims in terms of negligence or other common law causes of action...."). In view of this, it is clear that Barretto's claims are time-barred. COGSA provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C.App. § 1303(6). In this case, the goods were delivered in San Juan, Puerto Rico on October, 23, 1986. Barretto did not file this action until July 22, 1988. Thus, the complaint was properly dismissed.

*The district court's judgment is affirmed.*