THITI LERT WATANA CO., LTD., a corporation existing under the laws of the foreign state of Thailand, Plaintiff,

v.

MINAGRATEX CORPORATION, a corporation existing under the laws of the state of California; The Harwood Corporation, a corporation existing under the laws of the state of North Carolina; International Services Group, Inc., a corporation doing business in the state of California; Republic Bank of New York, a banking corporation existing under the laws of the state of New York, Commissioner of the Social Security Administration, Defendant.

No. C–00–0386–CRB.

United States District Court,
N.D. California.

July 13, 2000.

Thornton Kontz, Comstock Shannon & Thompson, Santa Cruz, CA, James K. Kaney, Daniel C. Fleming, Wong Fleming P.C., Edison, NJ, for plaintiff.

Michael C. Li, John Fiero, Landels Ripley & Diamond LLP, San Francisco, CA, for defendants.

John M. Daley, John M. Daley Law Offices, San Francisco, CA.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Defendant ISG has moved to dismiss plaintiff's eighth, ninth and eleventh causes of action for conversion, negligence and civil conspiracy respectively. The grounds for this motion are that the claims are barred either by the statute of limitations set forth by the Carriage of Goods by Sea Act ("COGSA") or by the nine-month period of limitations set forth in paragraph nineteen of the Worldbridge bill of lading. Alternatively, defendant seeks to dismiss the conspiracy claim on the ground that it fails to meet the particularity requirements of Federal Rule of Civil Procedure 9(b).

### BACKGROUND

According to the complaint, plaintiff Thiti Lert Watana Co., Ltd. is a Thai manufacturer and supplier of men's undergarments. Complaint at ¶ 1. During the winter of 1997–1998 defendant Minagratex placed an order with plaintiff and agreed to pay for the goods under a letter of credit issued by defendant Republic Bank of New York, ("Republic Bank"). Complaint at ¶ 10–13, 15. Minagratex planned to distribute/supply the goods to defendant Harwood. Complaint at ¶ 9. Plaintiff shipped the goods in question to the United States under a bill of lading issued by freight forwarder and common carrier, Worldbridge Transportation (Thailand) Co., Ltd., ("Worldbridge"). Complaint at ¶ 16, 17, 20. This bill of lading allegedly served as the contract of carriage for the container of goods being shipped by plain-

tiff. Complaint at ¶ 22. Defendant ISG, the customs and forwarding agent for defendants Minagratex and Harwood, was named as the receiving agent for Worldbridge in the upper right-hand corner of the original bill of lading. D. Mot. to Dismiss at 2.

After plaintiff delivered the goods to Worldbridge in Thailand, they were "transhipped" to a vessel operated by NYK Line in Singapore, where a second bill of lading was issued by NYK. Complaint ¶ at 24–25. Plaintiff alleges that this second bill of lading was fraudulent and listed Worldbridge as the shipper and ISG as the consignee. Complaint at ¶ 25.

The goods allegedly arrived in South Carolina "sometime prior to February 4, 1998" and were transferred to a bonded warehouse owned by U.S. Customs. Complaint at ¶ 28. ISG was notified of the arrival and used the second bill of lading to remove the goods from the warehouse. Complaint at ¶ 31. On behalf of defendant Minagratex, ISG then delivered the goods to defendant Harwood. Complaint at ¶ 33.

On February 2, 2000, plaintiff initiated the instant action against Minagratex, Harwood, ISG and Republic Bank. The complaint included eleven causes of action, including three against defendant ISG for conversion, negligence and civil conspiracy. Complaint at ¶ 84, 88, 97. On May 12, 2000, defendant ISG moved to dismiss all three causes of action.

### DISCUSSION

**I. Plaintiff's claim against ISG is barred by the statute of limitations clause in COGSA [46 U.S.C.App. § 1303(6) ].**

Defendant argues that the claims are barred by the one-year statute of limitations contained in the Carriage of Goods by Sea Act. The Court must address two questions in order to resolve this issue. First, the Court must determine whether COGSA covers the events alleged in the complaint. Second, if COGSA applies, the Court must decide whether ISG is entitled to the defenses and limitations of liability contained in COGSA.

### A. This portion of the carriage is covered by COGSA.

First the Court must consider whether COGSA covers ISG's removal of the goods from the customs warehouse. COGSA covers "the carriage of goods by sea to or from ports of the United States, in foreign trade," and every bill of lading which is evidence of a contract for this type of transaction shall have "effect subject to the provisions" of COGSA. 46 U.S.C.App. § 1300. The term "carriage of goods" includes the period of time commencing when the goods are loaded onto a ship, and ending when the goods are discharged from the ship. 46 U.S.C.App. § 1301(e).

In this case, the alleged mishandling of goods by ISG did not occur until after the goods had been removed from the carrier's vessel and placed into the customs warehouse. Complaint at ¶ 28, 31. However, under section 1307 of COGSA, parties are permitted to contractually extend the coverage of COGSA by including such an agreement in a "Paramount Clause" in the bill of lading. 46 U.S.C.App. § 1307. ISG claims that paragraph seven of Worldbridge's original bill of lading, titled "Paramount Clause," extends COGSA to the carriage of goods, not only by sea, but by "inland waterways also." *See* Original Bill of Lading. Plaintiff claims that the removal of the goods from the warehouse occurred *prior* to any travel via inland waterways and that the interim period was not covered by the bill of lading. Pl. Opp. at 5.

According to plaintiff's reading of the Paramount Clause, COGSA's provisions should apply to the shipment until it reaches the United States, at which point the coverage should temporarily be suspended while the goods are transferred onto a second boat. According to this theory COGSA begins again only once the goods have been moved and the second ship is underway via inland waterways.

This argument is not persuasive. When parties broadly extend the coverage of COGSA to include carriage via inland waterways, they surely intend a continuous stream of coverage, rather than a disjointed, intermittent coverage which starts and stops periodically. Therefore, according to most logical interpretation of the Paramount Clause in this case, the time after discharge from the NYK ship and prior to loading onto the inland waterway ship is covered by COGSA. Therefore, the portion of the carriage when ISG removed the goods from the customs warehouse falls within COGSA's coverage.

**B. ISG is entitled to the defenses listed in 46 U.S.C.App. § 1303(6).**

 Even if COGSA covers the activities at the customs warehouse, plaintiff argues that ISG is not entitled to the defenses and limitations of liability granted to the carrier under COGSA. Section 1303(6) states that the *carrier* is discharged from all liability with respect to loss, "unless suit is brought within one year of delivery of the goods . . . ." ISG was not the carrier in this case. Rather, it was the customs and forwarding agent of defendant Minagratex, as well as the agent for Worldbridge at the point of delivery. Complaint at ¶ 25; D. Mot. to Dismiss at 6. However, parties can extend the defenses and limitations of liability provided to the carrier under COGSA to third parties by including a "Himalaya Clause" in the bill of lading. *See Barretto Peat, Inc. v. Luis Ayala Colon Sucrs, Inc.*, 896 F.2d 656, 659 (1st Cir.1990). In order to extend the COGSA limitations period to ISG, the Himalaya Clause must "clearly express the parties' intent to extend COGSA to a third party." *Barretto*, 896 F.2d at 670. This standard is met if the bill of lading extends benefits to a "well defined class of readily identifiable persons." *Certain Underwriters at Lloyds' v. Barber Blue Sea Line*, 675 F.2d 266, 270 (11th Cir.1982). The third parties need not be referred to by name as long as the contracting parties' intent to include the third parties is clear. *Barretto*, 896 F.2d at 660.

ISG argues that the Himalaya Clause in Worldbridge's original bill of lading, found in paragraphs 2 and 11.1, clearly extends the carrier's defenses to ISG. The relevant paragraphs state:

**2. Issuance of the "Combined Transport Bill of Lading."**

\* \* \* \* \* \*

2.2 For the purposes of and subject to the provisions of this Bill of Lading, the Freight Forwarder shall be responsible for the acts and omissions of any person of whose services he makes use for the performance of the contract evidenced by this Bill of Lading.

\* \* \* \* \* \*

**11. Liability of Servants and Subcontractors.**

11.1 If an action for loss of or damage to the goods if brought against a person referred to in paragraph 2 of Clause 2, such person shall be entitled to avail himself of the defenses and limits of liability which the Freight Forwarder is entitled to invoke under these Conditions.

Defendant ISG claims that since Worldbridge, the carrier, designated ISG as its agent at the point of delivery, ISG was clearly intended as a third party recipient of the carrier's defenses under COGSA. D. Mot. to Dismiss at 6.

 Plaintiff does not appear to contest the classification of ISG as the carrier's agent. Rather, ISG argues that the phrase "any person" is too vague, and "any person of whose service he makes use" is not a well defined class of persons. Pl. Mot. at 3. Even if a third party is an agent of the carrier, the bill of lading must still clearly and expressly extend the COGSA provisions to the agent in order for that party to be covered. *Styling Plastics Co., Ltd. v. Neptune Orient Lines, Ltd.*, 666 F.Supp. 1406, 1409 (N.D.Cal.1987).

The main issue concerning this Himalaya Clause is whether it describes the covered third parties with the requisite speci-

ficity. In other words, does the clause clearly express the parties' intent to include ISG in the class of third party beneficiaries, and does it contain a well defined class of readily identifiable persons.

### i. What is the required level of specificity.

Case law indicates that there must be a certain level of specificity in a Himalaya Clause in order for it to be a valid extension of COGSA benefits to third parties. To resolve this motion the Court must determine what is needed to satisfy the specificity requirement. The two extreme ends of the specificity scale are represented by *Tessler* and *Herd.* In *Tessler,* the Ninth Circuit found that a Himalaya Clause specifically mentioning "agents" in the bill of lading was sufficient to extend the carrier's defenses and limits of liability to its agent. *Tessler Brothers (B.C.) Ltd. v. Italpacific Line,* 494 F.2d 438 (9th Cir. 1974). In *Herd,* the Supreme Court stated that since the bill of lading made no reference whatsoever to any parties other than the carrier, the defenses and limits of liability were not extended to agents or stevedores. The Court concluded that "if such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract." *Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 302, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959). This case is somewhere in the middle of these two extremes. The bill of lading issued by Worldbridge does not specifically use the term "agents," yet it does imply some intent to extend the COGSA defenses to third parties.

### ii. Was there intent to include ISG?

The Court must decide whether the Himalaya Clause reflects the parties' intent to extend the carrier's COGSA defenses to ISG. Plaintiff cites *Timco Engineering, Inc. v. Rex & Company, Inc.,* 603 F.Supp. 925, 928, as an example of what is needed to show a clear intent. In that case, the court found that a bill of lading which stated, "every such servant, agent, steve-dore and subcontractor shall have the benefit of all provisions herein benefitting the carrier ..." sufficiently reflected the intent of the parties to extend the carrier's rights to stevedores. This, however, does not help establish the minimum requirement, since the bill of lading at issue in *Timco* was very specific. Worldbridge's bill of lading, on the other hand, is not quite so specific because it does not use any terms such as "agent" or "subcontractor."

In spite of the lack of a specific reference to an "agent," the bill of lading in this case does evidence the parties' intent to extend benefits to certain third parties. The title of paragraph 11.1 in the bill of lading specifically refers to "servants and subcontractors," which indicates the parties' desire to extend the carrier's defenses to such parties. Also, the wording of the clause itself reflects an intent to extend the defenses even farther.

■ The substantive language of the Himalaya clause in Worldbridge's bill of lading reflects an intent to extend the carrier's rights to "any person of whose services [the Freight Forwarder] makes use for the performance of the contract." *See* Original Bill of Lading. As Worldbridge's agent, ISG was responsible for delivering plaintiff's goods to the buyers and was essential to Worldbridge's fulfillment of the contract for delivery. Therefore, ISG was included in the Himalaya Clause's coverage.

Courts are reluctant to stretch the language of a Himalaya Clause to include third parties who are not clearly part of the intended class of beneficiaries. *Herd,* 359 U.S. at 305, 79 S.Ct. 766 (the Himalaya clause must be "strictly construed and limited to the intended beneficiaries."); *Lucky–Goldstar Int'l v. S.S. California Mercury,* 750 F.Supp. 141, 145 (S.D.N.Y. 1990) (when construing admiralty contracts, the court may not "stretch the language ..."). The wording chosen by the parties in our case does not require "stretching" in order to decipher its mean-

ing. Interpreted in its plain meaning, the clause reflects an intent to include all those people whose services the carrier uses, including its agent, ISG.

### iii. Is there a well defined class of people?

The wording of the Himalaya Clause in this case sufficiently creates a well defined class of people to whom it extends COGSA benefits. The clause states that it includes any persons whose services the forwarding agent uses "for the performance of the contract evidenced by this bill of lading." ISG fits within this broad but clear definition. One of the services Worldbridge was expected to perform under the original bill of lading was the delivery of the goods. ISG was hired for precisely this purpose: to deliver the goods once they arrived in the United States. ISG is therefore clearly a member of the easily identifiable class of people whose services were used by Worldbridge specifically in connection with the performance of the duties owed under the bill of lading.

In *Gebr Bellmer Kg.*, the court determined that the Himalaya Clause referring to "independent contractors ... whose services the carrier ... may engage in" extended COGSA defenses and limitation of liability to a stevedore hired by an agent of the carrier. *Barretto*, 896 F.2d at 660, citing *Gebr. Bellmer KG v. Terminal Services Houston, Inc.*, 711 F.2d 622 (5th Cir.1983). The court did not have trouble identifying the class of people to whom the bill of lading referred. The main difference between the *Bellmer* clause and the one in Worldbridge's bill of lading is the size of the class to whom the clause extends COGSA clause benefits. The use of "any person" might result in a larger group of recipients than the term "independent contractors," but this difference does not make the class any less definable.

In *Certain Underwriters*, a Himalaya Clause including "agents" and "independent contractors" was determined to clearly include "all those persons engaged by the carrier to perform the functions and duties of the carrier within the scope of the carriage contract." *Certain Underwriters*, 675 F.2d at 270. The class of beneficiaries in Worldbridge's clause is not necessarily significantly larger or more ambiguous than that accepted by the court in *Certain Underwriters*.

It is quite clear from the plain language in the Himalaya Clause that the parties intended to include ISG, because ISG was essential to the completion of the contract. The fact that ISG was listed as an agent of the carrier on the original bill of lading also indicates that plaintiff should have been aware that ISG was one of the parties whose services would be used by the carrier.

### II. Plaintiff's claim is also barred by the nine-month statute of limitations in paragraph nineteen of Worldbridge's bill of lading.

In the alternative, defendant ISG argues that plaintiff's claims are barred by the nine-month statute of limitations included in Worldbridge's bill of lading, which states:

### 19. Time Bar

The Freight Forwarder shall be discharged of all liability under the rules of these Condition, unless suit is brought within nine months after

(i) the delivery of the goods; or

(ii) the date when the goods should have been delivered.

Defendant argues that, as with the COGSA provisions, paragraphs 2.2 and 11.1 explicitly extend the defenses and limitations of liability available to the carrier, to ISG. Paragraph 10.1 of the bill of lading states that the "defenses and limits of liability provided for in these Conditions shall apply in any action against the Freight Forwarder for loss of ... the goods whether the action be founded in contract or in tort." This signifies that the defenses can be used by ISG against charges of conversion and civil conspiracy.

When shipments are not covered by COGSA, they are covered by the Har-

ter Act, 46 U.S.C.App. § 190 *et seq.*, which does not contain a statute of limitations. When the Harter Act governs, carriers are permitted to impose a limitations period, without violating the Act, so long as the time period is reasonable. *Insurance Company of North America v. Puerto Rico Marine Management Inc.*, 768 F.2d 470, 478 (1st Cir.1985); *see also Modern Office System Inc. v. AIM Caribbean Express Inc.*, 802 F.Supp. 617, 622 (D.Puerto Rico 1992). In *Government of Indonesia v. The General San Martin*, 114 F.Supp. 289, 290 (S.D.N.Y.1953) the court found a three month statute of limitations to be reasonable when COGSA did not apply. The court stated that COGSA's year-long limitation period does not set a minimum limitations period for parties contracting outside the reach of COGSA. *Id.* at 290. Considering plaintiff's shipment took about two months to arrive in the United States (from December to February) and plaintiff was aware immediately that it had not received its money, a nine-month limitations period is reasonable in this case.

Even if COGSA coverage does not extend to ISG, defendant is still protected by the reasonable nine-month time period created by the parties. As discussed above, the carrier's defenses, including this limitations period, are extended to ISG through the bill of lading's Himalaya Clause. For this reason, the Court concludes that, even in the absence of COGSA, plaintiff's claims against ISG are barred.

**III. Issuing an order to show cause why plaintiff's New Jersey counsel should not be ordered to reimburse ISG for its attorney fees and expenses under 28 U.S.C. § 1927.**

In its reply to plaintiff's opposition, defendant asks to the Court to consider issuing an order to show cause why plaintiff's New Jersey counsel should not be ordered to reimburse ISG for thousands of dollars in attorneys' fees and expenses that they have incurred as a result of counsel's refusal to dismiss ISG from this action.

28 U.S.C. § 1927 states any attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Defendant claims that the arguments in plaintiff's opposition brief were based on "misstatements concerning the language used in the Worldbridge bill of lading and upon propositions which are contrary to established law," and therefore reflect an attempt to "unreasonably" and "vexatiously" multiply the proceedings in this case.

A section 1927 sanction is not appropriate in this case. Plaintiff's complaint, while unsuccessful, was neither vexatious nor unreasonable. Accordingly, defendant's motion for sanctions is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**