**R & G ENGINEERING, INC.,**
et al., Plaintiffs,

v.

**TRANSCONTAINER TRANSPORT,**
**INC., Defendant.**

**No. CIV. 98–1760(RLA).**

United States District Court,
D. Puerto Rico.

July 18, 2002.

José E. Colón–Santana, San Juan, PR, for Plaintiffs.

William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, for Defendant.

## ORDER DISMISSING THE COMPLAINT AS TIME–BARRED

ACOSTA, District Judge.

This action was initially filed in the local court by plaintiffs, R & G ENGINEERING, INC. ("R & G") and JERVIS ENTERPRISES ("JERVIS"), against TRANSCONTAINER TRANSPORT, INC. ("TRANSCONTAINER") and GREAT AMERICAN INSURANCE COMPANY ("GAICO") for collection of monies. Subsequently, plaintiffs conceded they had no valid claim against GAICO and stipulated to its dismissal.[1] TRANSCONTAINER, the sole remaining defendant, has moved the court to dismiss the complaint as time-barred.

## BACKGROUND

Plaintiffs are corporations primarily engaged in the business of selling electrical equipment and associated services to other companies. TRANSCONTAINER is a freight forwarding company engaged in the business of maritime transportation and GAICO is an insurance company which had issued a marine insurance policy on plaintiffs' cargo. TRANSCONTAINER handled the arrangements for the transportation of said cargo.

In essence, the complaint claims that in March 1993, R & G retained TRANSCONTAINER to arrange for the transport of a large electric transformer from the United States to the Dominican Republic. R & G further requested that TRANSCONTAINER make arrangements to insure the shipment of the transformer which TRANSCONTAINER complied with under its

---

1. *See* Stipulation for the Entry of Partial Judgment of Dismissal, filed on May 5, 1999 (docket No. 23) and Order of approval, filed on May 24, 1999 (docket No. 24).

Marine Open Cargo Policy with GAICO. At the time the transformer was being unloaded at the pier in the Dominican Republic, it was dropped and damaged.

Plaintiffs claim that in 1994 GAICO paid TRANSCONTAINER the insurance claim proceeds for the damages to the transformer but that TRANSCONTAINER improperly retained these monies thereby defrauding plaintiffs.

The court having reviewed defendant's request for summary judgement as well as plaintiffs' opposition thereto hereby finds as follows:

## SUMMARY JUDGMENT

Federal courts will grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Rule 56(c) Fed.R.Civ.P. The First Circuit Court of appeals has reiterated that the function of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)); *Vega–Rodriguez v. P.R.T.C.*, 110 F.3d 174, 178 (1st Cir.1997).

"To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact." *Cortés–Irizarry*, 111 F.3d at 187. Further, "[a] genuine issue of fact exists only if a reasonable jury could resolve it in favor of either party." *Basic Controlex Corp. v. Klockner Moeller Corp.* 202 F.3d 450, 453 (1st Cir.2000).

The court is required to "constru[e] the record in the light most favorable to the nonmovant and resolving all reasonable in-

ferences in that party's favor." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir.2000); *Cortés–Irizarry*, 111 F.3d at 187.

A party moving for summary judgment must not only show that there is "no genuine issue of material facts", but also that he is "entitled to judgment as a matter of law." *Vega–Rodriguez*, 110 F.3d. at 178. "A fact is 'material' if it potentially could affect the suit's outcome . . . [and is] 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor". *Cortes–Irizarry*, at 187 (citations omitted).

It is axiomatic that when a summary judgment motion is supported with affidavits or other materials, the non-moving party cannot respond with mere allegations and denials. Instead, the non-moving party must show, also by affidavits, depositions, testimonies or otherwise, that a genuine issue of facts remains for trial. *Michelson v. Digital Fin. Serv.*, 167 F.3d 715, 720 (1st Cir.1999). In order to be considered, the facts contained in the documents and the materials attached to the motion for summary judgment as well as to the opposition must be admissible or usable at trial. *Carmona v. Toledo*, 215 F.3d at 131.

In the case at hand, defendant submitted along with its motion for summary judgment and in accordance with the provisions of Local Rule 311.12, a statement carefully enumerating twenty (20) uncontested facts properly supported by specific references to the record. Plaintiffs' opposition, however, fails to address TRANSCONTAINER's Statement of Uncontested Facts, as required by the Local Rules. Instead, plaintiffs offered their own version of Uncontested Facts, which purport to list twenty-one (21) material facts not in dispute. Of these twenty-one "facts", thir-

teen (13) have no reference whatsoever to the record as mandated by Local Rule 311.12 and the remaining eight (8) are neither genuine, nor material to the issues before the court as set forth in defendant's Motion for Summary Judgment. Simply stated, plaintiffs do not dispute the facts as presented by defendant.

Strict compliance with the terms of Local Rule 311.12 has been endorsed by the Court of Appeals which has admonished that "parties ignore them at their peril," *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000) and that "non-compliance with such a rule, as manifested by a failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies deeming the facts presented in the movant's statement of undisputed facts admitted." *Id.; accord Corrada Betances v. Sea–Land Serv., Inc.*, 248 F.3d 40, 43 (1st Cir.2001); *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001).

Under these circumstances, it is clear that plaintiffs have failed to abide by the specific directive of Local Rule 311.12 as well as with the prevailing case law. Plaintiffs failed to point to any factual issues buttressed by record citations. In view of the above, we give complete credence to defendant's Statement of Uncontested Facts.

## UNCONTESTED FACTS

The following are the uncontested facts as submitted by defendant in its motion:

Plaintiff R & G is incorporated in Puerto Rico, home-based in Santurce, Puerto Rico, and is in the business of representing different manufacturers associated with the electrical industry. (Defendant's Statement of Uncontested Facts No. 1, Motion for Summary Judgment, Exh. 1 of Defendant's Memorandum of Law, at pages 6, 9 and 10.).

Plaintiff JERVIS, a corporation with its principal offices in the Dominican Republic, is primarily in the business of selling electrical equipment to the Dominican power company, as well as to other companies. (Exh. 1 of Defendant's Motion for Summary Judgment, pp. 19, 20 and 21).

MR. JOSÉ IGNACIO ACERO is one of the owners of JERVIS (Motion for Summary Judgment, Exh. 1, pp. 19, 20, 21) and another company in the Dominican Republic by the name of METALEX. (Exh. 1 of Defendant's Motion for Summary Judgment, p. 23).

TRANSCONTAINER is a freight-forwarding corporation, which has been in business since 1978 and is engaged primarily in maritime transport, with principal offices in New York. (*See* Complaint ¶ 3; PETER JORDI, Affidavit in Support of Defendant's Motion for Summary Judgment, attached as Exh. 3, ¶ 2).

During 1993 and 1994, TRANSCONTAINER was retained by R & G Engineering to transport a number of shipments of power equipment and supplies from various points in the United States to the Dominican Republic. (JORDI Affidavit, Motion for Summary Judgment, Exh. 3, ¶ 2).

Some time prior to the month of August 1993, R & G purchased a Westinghouse 200 MVA/electric transformer in the United States and sold it to JERVIS, who in turn then sold it to the ultimate consumer, the Dominican power plant. (Complaint, Exh. 2, ¶¶ 6 and 7; Motion for Summary Judgment, Exh. 1, pp. 24–28).

As a consequence of the above, TRANSCONTAINER was retained by R & G to make the arrangement for the ocean and inland transportation of said equipment from Houston, Texas, to the Dominican Republic. R & G further requested that TRANSCONTAINER make arrange-

ments to insure the shipment of the electric transformer and TRANSCONTAINER did, in fact, do so, under its Marine Open Cargo Policy with GAICO. (Complaint, Exh. 2, ¶ 8; Motion for Summary Judgment, Exh. 1, p. 25).

On or about August 8, 1993, while the transformer was being unloaded from the vessel to the pier it was dropped and damaged. (Complaint, Exh. 2, ¶ 3; Motion for Summary Judgment, Exh. 3, ¶ 3). As a result of the damage to the transformer, TRANSCONTAINER, the assured under the Marine Open Cargo Policy with GAICO, filed the appropriate claim with the insurer. (Motion for Summary Judgment, Exh. 3, ¶ 3; Complaint, Exh. 2, ¶ 13).

On August 18, 1993, R & G was specifically notified as to the (1) identity of the insurance carrier, (2) the number of the claim, (3) the contact person within GAICO and (4) the telephone number of the person. (Complaint, Exh. 2, ¶ 13; see also facsimile communication from TRANSCONTAINER to R & G dated August 18, 1993, attached as Exh. 4 of Motion for Summary Judgment).

On or about June 23, 1994, GAICO made a payment under the policy to TRANSCONTAINER with respect to the previously mentioned damaged transformer in the amount of $120,000.00. (Complaint, Exh. 2, ¶ 16; Motion for Summary Judgment, Exh. 3, ¶¶ 2, 3). Defendant admits that it retained the insurance proceeds from the settlement of the claim for the damaged transformer as a set off against obligations owed to it by R & G for various freight forwarding and related services to R & G. (Motion for Summary Judgment, Exh. 3, ¶ 3; Complaint, Exh. 2, ¶ 16).

MR. JOSE IGNACIO ACERO, the owner of plaintiff JERVIS, was the person selected by R & G and JERVIS to prepare the claim and follow-up on the insurance payment for the damaged transformer. (Motion for Summary Judgment, Exh. 1,

pp. 100–102, 107, 108). Accordingly, through copy of a fax dated July 12, 1994, addressed to FREDERICK SCHAD, MR. ACERO, of JERVIS, was notified at the METALEX address that GAICO had paid the insurance proceeds directly to TRANSCONTAINER. (Complaint, Exh. 2, ¶ 19; Motion for Summary Judgment, Exh. 1, pp. 110, 111; also see, July 12, 1994 facsimile communication to FREDERICK SCHAD, attached as Exh. 6 of Motion for Summary Judgment).

Some time later that same year, 1994, MR. ACERO of JERVIS, advised MR. CAMINO of R & G that GAICO had already paid TRANSCONTAINER for the insurance claim. (Motion for Summary Judgment, Exh. 1, pp. 112–115). On August 7, 1994, MR. PETER MACK, on behalf of TRANSCONTAINER, sent a fax to MR. CAMINO of R & G, requesting that MR. CAMINO call MR. PETER JORDI to discuss the insurance settlement. (Motion for Summary Judgment, Exh. 3, ¶ 4; also see August 7, 1994 facsimile communication, attached as Exh. 7 of Motion for Summary Judgment).

After the TRANSCONTAINER fax of August 7, 1994, there was no further communication between the parties, either in writing or verbally, concerning the $120,000.00 proceeds of the insurance settlement and/or the outstanding obligations owed to TRANSCONTAINER by R & G until on or about late June or early July of 1998, when R & G served TRANSCONTAINER with a summons and complaint in this action. (Motion for Summary Judgment, Exh. 3, ¶¶ 4, 6, 7, and also Exh. 1, pp. 106–110).

At the time TRANSCONTAINER was served with the summons and complaint in this action in mid–1998, it had not heard from R & G for years; nor had it any advance notice that R & G was objecting to TRANSCONTAINER's retention of the

insurance proceeds or that R & G was contemplating litigation. Moreover, TRANSCONTAINER had already disposed of its files relating to transactions from 1993 and at least the first several months of 1994, because of a shortage of storage space. The discarded files included TRANSCONTAINER's files for all of its business, not just its dealings with R & G. For that reason, TRANSCONTAINER no longer has most of the records, such as bills of lading, vendor invoices, faxes, etc., that would provide back-up documentation for the services reflected in four (4) of the six unpaid invoices. The exceptions are two invoices, which were not sent to R & G until October 1994. At the time this lawsuit was commenced, TRANSCONTAINER had not yet discarded files covering the last part of 1994. Consequently, it still has its supporting records for the last two unpaid invoices. (Motion for Summary Judgment, Exh. 3, ¶ 7).

## APPLICABLE STATUTE OF LIMITATIONS

### (1) Conversion Doctrine

■ Defendant argues that plaintiffs' claim is a tort action for conversion of maritime insurance proceeds and is therefore, time-barred by the one-year limitations period provided in Art. 1868 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5298 (1990). In support thereof, TRANSCONTAINER points to the decision issued in *Barreto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc.*, 709 F.Supp. 321 (D.P.R.1989), aff'd 896 F.2d 656 (1st Cir. 1990).

Plaintiffs, on the other hand, contend that their action is one for damages arising from a breach of contract and therefore, the applicable limitations period is the fifteen-year term for *ex-contractu* claims under Art. 1864 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit., 31 § 5294 (1990).

Conversion is a form of intentional fault governed by Art. 1802 of the Puerto Rico Civil Code, Laws of P.R. Ann. tit., 31 § 5141 (1990) which provides that a person who causes damage to another through fault or negligence is liable in damages. Tort actions have a one-year statute of limitations, which commences to run on the date the aggrieved party had knowledge of the tort. Art. 1868 of the Puerto Rico Civil Code, Laws of P.R. Ann. tit., 31 § 5298 (1990).

In *Barreto Peat*, plaintiff claimed that defendant illegally exercised or assumed authority over his property, thereby depriving plaintiff of its use. After analyzing plaintiffs' allegations, the court concluded that they gave rise to a finding of conversion. Therefore, reference to plaintiffs' allegations is essential in order to ascertain whether the conversion doctrine is applicable to the instant case. The court, in *Barreto Peat* analyzed the conversion doctrine pursuant to the case law of the Supreme Court of Puerto Rico. In pertinent part the court held:

> The Supreme Court of Puerto Rico has defined conversion as "not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and employment". (citations omitted)

*Id.*, 709 F.Supp. at 323.

The complaint alleges as follows:

> "Defendant's actions constitute a fraudulent act in prejudice of the plaintiffs, upon refusing to make payment, alleging that they made payment without the plaintiff having recovered its loss. Both parties acted with a mutual and common agreement to defraud, in violation of the insurance contract, with

prejudice to plaintiff, and they are jointly and severally liable for the payment in addition to interest".

Complaint ¶ 20, Exh. 2 of Motion for Summary Judgment.

Likewise, in the Initial Scheduling Conference Memorandum, plaintiffs alleged as follows:

Transcontainer fraudulently appropriated the insurance funds without ever notifying the insured that the proceeds had been paid.

Initial Scheduling Conference Memorandum page 3 (docket No. 19).

Plaintiffs, herein, contend that defendant fraudulently retained the insurance proceeds without ever notifying the insured that said monies had been paid by GAICO and that these actions constitute fraud against plaintiffs. The court agrees with defendant that these allegations fit squarely within the definition of conversion provided by the Puerto Rico Supreme Court in *Hull Dobbs Co. v. Superior Court,* 81 P.R.R. 214, 222, 1959 WL 13596 (1959) and *Heirs of Sorbá v. Viñas,* 49 P.R.R. 31 (1935).

█ Therefore, we conclude that the one-year statute of limitation provided in Art. 1868 of the Puerto Rico Civil Code governs plaintiffs' cause of action. We must now, therefore, determine when the cause of action accrued in order to decide whether or not it is timely.

It is undisputed that by July 12, 1994 plaintiffs knew that TRANSCONTAINER had received the insurance proceeds for the damaged cargo in question. Further, not only were plaintiffs aware of defendant's receipt of the insurance proceeds by this time but they also failed to take any action in response to defendant's August 7, 1994 written notice, requesting that R & G contact TRANSCONTAINER to resolve the insurance payment issue. Despite this knowledge and invitation it is not until April 22, 1998, that is approximately four

(4) years later, that plaintiffs for the first time claim that TRANSCONTAINER fraudulently retained the insurance proceeds.

Thus, the undisputed facts of the instant case can lead to only one inescapable conclusion: the complaint for fraudulent conversion is time-barred and should be dismissed.

### (2) COGSA

█ As an alternative ground for dismissal, TRANSCONTAINER contends that this action is also time-barred under the limitations period provided by Section 1303(6) of the United States Carriage of Goods by Sea Act, 46 U.S.C.App. 1303(6) ("COGSA").

Plaintiffs, on the other hand, contend that COGSA is not applicable because TRANSCONTAINER retained the insurance proceeds not due to claims related to the cargo in controversy—the shipment of the Westinghouse 200 MVA/electric transformer—but to other unrelated shipments. According to plaintiffs' theory, COGSA'S limitations against claims or suits are strictly limited to the parties' relationship under the specific cargo contract. Plaintiffs reason that since their claim derives from TRANSCONTAINER's determination to keep the insurance proceeds and not from the terms of the cargo contract, COGSA is not inapposite to the instant case. Plaintiffs further argue that COGSA's application ceased upon payment of the insurance claim for the damages suffered by the goods.

Plaintiffs' arguments are clearly inconsistent. On the one hand, they allege that the doctrine of conversion is not applicable because their cause of action against TRANSCONTAINER is based on contract, not on tort. However, plaintiffs did not articulate nor specify which contractual obligation was breached by defendant.

At the same time, plaintiffs argue that COGSA is not applicable because their claim derives from defendant's decision to retain the insurance proceeds, and not from the cargo contract. (Plaintiffs' Opposition, page 7). As well noted by defendant, either TRANSCONTAINER breached the existing agreement between the parties, i.e., the cargo contract, or the decision to retain and/or convert the insurance proceeds came after said contract had been fully executed.

■ COGSA applies to shipments between the United States and a foreign port. 46 U.S.App. § 1312; *Barreto Peat,* 709 F.Supp. at 324. Plaintiffs admit that they contracted TRANSCONTAINER for the transportation of a transformer by sea from the city of Houston, Texas, to the Dominican Republic. (Complaint ¶ 8). Further, plaintiffs affirmatively allege that on August 8, 1993 said transformer suffered severe damage while it was in the custody and, therefore, the responsibility of TRANSCONTAINER. (Complaint, ¶ 11). Since the shipment in this case was for the carriage of goods between the United States (Houston) and a foreign port (Dominican Republic), COGSA applies by its own terms, 46 U.S.C.App. § 1312. Therefore, Plaintiffs are precluded from circumventing the application of COGSA by couching their complaint in terms of breach of contract. *Barretto,* 896 F.2d. at 661.

COGSA imposes a one-year statute of limitations on suits against the carrier and its agents. To that effect, Section 1303(6) provides in the pertinent part as follows:

> In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one-year after delivery of the goods or the date when the goods should have been delivered.

*See also Insurance Co. of North America v. Puerto Rico Marine,* 768 F.2d 470 (1st Cir.1985).

In this case the goods were delivered in the Dominican Republic in August, 1993. Plaintiffs did not file this action until April 22, 1998. Inasmuch as the complaint was not brought within one-year after delivery of the goods or the date in which the goods should have been delivered, pursuant to the provisions of 46 U.S.C.App. § 1303(6), plaintiffs' action is time-barred.

### (3) Puerto Rico Commerce Code

As a third ground for dismissal defendant contends that plaintiffs' action is also barred under the statute of limitations set forth in the Puerto Rico Commerce Code, Laws of P.R. Ann. tit., 10 § 1910 (1997). In their Opposition plaintiffs did not address this particular argument.

■ The Puerto Rico Commerce Code applies when a party engages in a commercial or mercantile transaction. The Commerce Code indicates that a purchase and sale is commercial when a party buys goods to be resold for the purpose of deriving a profit in the resale. Art. 243 of the Commerce Code, Laws of P.R. Ann. tit., 10 § 1701. The Commerce Code applies even if those that executed the actions are normally not engaged in mercantile transactions. *See* Laws of P.R. Ann. tit., 10 § 1002.

■ In the instant case, plaintiff R & G bought the generator in question and sold it to JERVIS with the intention of making a profit. JERVIS, in turn, purchased the transformer and sold it to the end consumer, the Dominican electrical plant. TRANSCONTAINER, who is in the business of maritime transportation for profit, was contracted to transport and insure the generator. Obviously, all these acts are commercial transactions within the definition of the Puerto Rico Commerce Code.

The Commerce Code of Puerto Rico provides for a one-year limitations period for actions related to the delivery of cargo in maritime or land transportation. Specifically, Art. 948, P.R. Laws Ann. tit., 10 § 1910(2) reads:

The following shall prescribe in one year:

.    .    .    .    .

(2) Actions relating to the delivery of the cargo in maritime or land transportation or to indemnity for delays and damages suffered by the goods transported, the period of prescription shall begin to be counted from the day of the delivery of the cargo at the place of its destination, or from the day on which it should have been delivered according to the conditions of its transportation.

The Commerce Code also sets forth a one-year statute of limitations. The period starts to run on the date of delivery of the cargo at the place of destination, or from the date when it should have been delivered. In the instant case the transformer was damaged while being unloaded and delivered on or about August 8, 1993.

Thus, plaintiffs' claim lapsed on August 8, 1994 and is thus time-barred since the complaint was filed on April 22, 1998.

### (4) Laches

Lastly, TRANSCONTAINER asserts that plaintiffs' cause of action is also time-barred under the doctrine of laches. Defendant argues that, in essence, this is a maritime claim filed in a local court under the saving to suitor's clause, 28 U.S.C. § 1333(1). Therefore, the local court was obligated to resolve the case in accordance with federal substantive maritime law unless, in balancing state and federal interests, the court concludes that there is no federal preemption and application of local law will not affect any entrenched principle of maritime law.

Plaintiffs, on the other hand, argue that pursuant to Puerto Rico law, laches is inappropriate in ordinary civil cases with specific time limitations periods and that the applicable statute of limitations is fifteen (15) years for breach of contract suits. *See* Art. 1864 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit., 31 § 5294 (1991).

In an admiralty action, in the absence of a statutorily fixed limitation period, the doctrine of laches applies. In determining whether a claim is barred by laches, the court will examine whether there was: (1) unreasonable delay, and (2) consequent prejudice to the party against which the suit is brought. *Cities Serv. Oil Co. v. Puerto Rico Lighterage Co.*, 305 F.2d 170, 171 (1st Cir.1962), cited with approval in *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 215, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).

In determining whether or not there has been unreasonable delay, the court will look to an analogous statutory period to see if the same has expired. As previously discussed, in actions for conversion the applicable term is one year from the tortious act; under COGSA, the time for filing suit is also one year from the date the goods were delivered or should have been delivered, and likewise, the Commerce Code of Puerto Rico also provides for a prescriptive term of one year from the date the goods were delivered or should have been delivered.

Applying any of the three aforementioned statutes and viewing them in the light most favorable to plaintiffs, we must conclude that there was unreasonable delay in the filing of the instant complaint. This action should have been filed at the latest on or before July 12, 1995 that is, one year after plaintiffs became aware that TRANSCONTAINER had, according to plaintiffs' claim, converted the insurance

proceeds. However, it was not until April 1998 that plaintiffs instituted these proceedings.

According to the record this inordinate delay in commencing the litigation as well as plaintiffs' failure to provide any advance notice of its objections to TRANSCONTAINER's retention of the insurance proceeds has clearly resulted in prejudice to the defendant since it no longer has the documentation necessary to properly defend itself in this action. As a matter of fact, plaintiffs themselves have confessed that they also lack substantial documentation relating to the relationship between the parties since it is their practice to discard documentation every five (5) years. (Exh. 1, of the Motion for Summary Judgment, p. 84).

The only explanation plaintiffs have attempted to provide for its inordinate delay in filing this claim has been to argue that the instant action is governed by Puerto Rico general contract law and that the statute of limitation is a fifteen (15)-year period set forth in the Puerto Rico Civil Code. However, this argument was squarely rejected in *Barreto Peat, Inc. v. Luis Ayala Colón Sucrs., Inc.,* 709 F.Supp. 321 (D.P.R.1989); aff'd 896 F.2d 656 (1st Cir. 1990).

Therefore, even assuming that the one-year limitations period provided for conversion actions; for claims under COGSA, and for actions related with the delivery of cargo under the Commerce Code were not applicable to the instant case, the Court finds that under the doctrine of laches, there was an unreasonable delay in the filing of the instant complaint, which clearly prejudiced the defendant.

## CONCLUSION

In light of the applicable law and the undisputed facts the court finds that the

**2.** *See* Plaintiffs' Opposition... (docket No. 46)

instant complaint filed on April 22, 1998 is time barred under the doctrines of conversion and laches as well as the provisions of COGSA and the Puerto Rico Commerce Code.

Accordingly, defendant's Motion for Summary Judgment (docket No. 45)[2] is GRANTED and the complaint is hereby DISMISSED WITH PREJUDICE.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

and defendant's Reply... (docket No. 47).