**MALGOR & CO., INC., Plaintiffs,**

v.

**COMPAÑÍA TRASATLÁNTICA ESPAÑOLA, S.A., et al., Defendants.**

**Civil No. 93–2667 (DRD).**

United States District Court, D. Puerto Rico.

June 30, 1996.

---

Jose F. Sarraga–Venegas, San Juan, PR, for Malgor & Co., Inc.

Edgardo A. Vega–Lopez, Jimenez, Graffam & Lausell, San Juan, PR, Carlos E. Bayrón–Velez, Mayaguez, PR, for Compañía Trasatlántica Española, S.A.

Jose E. Alfaro–Delgado, Calvesbert & Brown, San Juan, PR, for Puerto Rico Marine Management, Inc.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court are a motion to dismiss filed by co-defendant Compañía Trasatlántica Española, S.A. (Docket No. 6), a motion to dismiss and/or for summary judgment filed by co-defendant Puerto Rico Marine Management, Inc. (Docket No. 8), an opposition thereto filed by plaintiff Malgor &

Co., Inc. (Docket No. 13), and the codefendants' replies to the plaintiff's opposition (Dockets Nos. 19 and 20). The essence of the defendants' arguments is that the plaintiff's complaint should be dismissed for untimeliness because it was filed two months after the expiration of the one-year term mandated by the applicable statute of limitations. For the reasons described below, the Court grants both motions.

## I. Facts not in Controversy

█ Plaintiff Malgor & Co., Inc. ("Malgor") and co-defendant Compañía Trasatlántica Española, S.A. ("CTE") entered into two contracts, evidenced by bills of lading, for the carriage by sea of olives and olive oil from a port in Spain to a port in Puerto Rico on one of CTE's ships. CTE, in turn, engaged the services of co-defendant Puerto Rico Marine Management, Inc. (better known as "Navieras de Puerto Rico," or, simply, "Navieras") as its stevedoring agent. The bills of lading contained what are known as "Himalaya" clauses, which extend to a carrier's agents and independent contractors all those affirmative defenses enjoyed by the carrier.[1]

The ship departed on time, and Malgor received delivery of the shipment of olives and olive oil on September 30, 1992. However, due to mishandling at the San Juan docks, the crates containing the goods were overturned. The olives were declared a total loss, and the olive oil had to be repackaged. Two weeks later, Mr. Ricardo Torres, a Malgor employee, notified both Navieras and Intership, CTE's Puerto Rico agents, of the claim for the loss of the olives. Intership acknowledged receipt of the claim, and informed Malgor that it had forwarded the claim to CTE. Two months later, Mr. Torres notified Navieras and Intership of the claim for the costs of reconditioning the oil.

On February 8, 1993, having received no acknowledgment of receipt of the claims, Mr. Torres called a Navieras representative in San Juan. The representative then forwarded the claims to Navieras' New Jersey offices. Navieras then informed Mr. Torres, by means of a letter received April 16, 1993, that "inasmuch as we were acting as stevedoring agents for [CTE] and, therefore, no PRMSA bill of lading was ever issued, you must file these claims with [CTE] for satisfaction.... Once [CTE] settles your claims, they will in turn subrogate against Navieras." Mr. Torres understood this letter to indicate that CTE would, in fact, settle the claim, noting in his affidavit that "[a]t that point, it had already been [sic] evident to me that one of the parties would pay us." Mr. Torres then forwarded to CTE a copy of this letter together with a request for full payment.

In June of 1992, Mr. Carlos E. Bayrón, attorney for CTE, spoke on the telephone with Mr. Torres and informed him that he expected to be told by CTE within the following week whether or not they would make a settlement offer. On September 17, 1992, two weeks before the end of the one-year term, Mr. Bayrón called Mr. Torres and offered on behalf of CTE to settle Malgor's claims for 60% of the claim, which CTE thought was for $22,482.45. Mr. Torres reminded Mr. Bayrón that Malgor had also suffered $1,760.35 in damages for the reconditioning of the olive oil containers. As the plaintiff notes, "Mr. Bayrón confirmed that he did not have the documents for that second claim and requested that Torres send them to him." Mr. Torres also requested that Mr. Bayrón remit to him a copy of the settlement offer in writing.

---

1. Clause 21 in both bills of lading provided that "[i]t is hereby expressly agreed that no servant or agent of the company, (including stevedores and any other independent contractors temporarily employed by the Company) shall have any liability whatsoever to the Shipper.... Without prejudice to the foregoing, all exemptions, limitations, conditions and liberties herein contained, as well as all rights, exemptions from liability, defenses and immunities of whatsoever nature available to the Company ... shall also be applicable and shall extend for the protection of each and every one of said servants or agents."

Such contractual extensions of affirmative defenses, and in particular, the extension of the COGSA statute of limitations defense to stevedoring agents, have been found valid and enforceable. *B. Elliott (Canada), Ltd. v. John T. Clark & Son,* 704 F.2d 1305 (4th Cir.1983); *Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361 (9th Cir.1974).

While Mr. Torres waited for Mr. Bayrón to come back with an amended settlement offer, the filing deadline came and went. The parties did not communicate again until November 15, 1993, when Mr. Bayrón told Mr. Torres that he did not yet have a definite answer. On November 22, 1993, Mr. Bayrón informed Mr. Torres that CTE would not pay the claims because the one-year period had expired. Malgor filed this suit on December 3, 1993.[2]

## II. Standard for Summary Judgment

■ Even though the defendants' motions are labeled motions to dismiss, they make reference to various documents outside of the pleadings. Therefore, pursuant to Fed. R.Civ.P. 12(b), the Court will treat both dispositive motions as motions for summary judgment under Fed.R.Civ.P. 56. *Garita Hotel Ltd. v. Ponce Federal Bank*, 958 F.2d 15, 19 (1st Cir.1992). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Pursuant to Fed.R.Civ.P. 56(e), the opposing party must then designate specific facts that show that there is a genuine triable issue. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III. Applicable Law

The Carriage of Goods by Sea Act (COG-SA), 46 U.S.C. § 1300 *et seq.* (1975), provides that "[e]very Bill of Lading or similar document of title which is evidence of a contract for the Carriage of Goods by Sea to or from ports of the United States, in foreign trade,

shall have effect subject to the provisions of this chapter." The contracts were accordingly subject to the provisions of COGSA, including its one-year statute of limitations, which provides, in turn, that "[i]n any event, the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one (1) year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 1303(6).

■ Malgor filed this suit two months after the COGSA term had expired. The term set by section 1303(6) is strictly enforced and permits no interruption. *Hemis Trading Corporation v. Navieras de Puerto Rico*, 705 F.Supp. 72 (D.P.R.1989); *Fireman's Insurance Co. v. Gulf Puerto Rico Lines*, 349 F.Supp. 952, 956 (D.P.R.1972). Unlike under Puerto Rico's Civil Code, claims made extrajudicially, such as by letter, are not sufficient to toll the running of the COGSA statute of limitations. In fact, other than filing suit, there are only two ways in which the limitations term may be circumvented. First, the carrier may explicitly agree to waive the defense of the statute of limitations. *General Electric Co. v. M/V Gediz*, 720 F.Supp. 29, 30 (S.D.N.Y.1989); *Austin, Nichols & Co., Inc. v. Cunard Steamship, Ltd.*, 367 F.Supp. 947, 949 (S.D.N.Y.1973); *Fireman's Insurance Co.*, 349 F.Supp. at 956. However, this exception is inapplicable in this case because there is no evidence that CTE did, in fact, agree not to raise this defense.

■ Second, a carrier may be equitably estopped from raising the statute of limitations defense if the plaintiff "can show that he was misled by the defendants into reasonably and justifiably believing that the statute of limitations would not be used as a defense or would be extended." *Mikinberg v. Baltic Steamship Co.*, 988 F.2d 327, 331 (2d Cir. 1993); *Hemis Trading Corp.*, 705 F.Supp. at 74. However, mere settlement negotiations are not sufficient to equitably estop a carrier from raising the statute of limitations defense. *Modern Office System, Inc. v. AIM*

---

**2.** Malgor claims $22,482.45 in damages for the loss of the olives, and $1,760.35 in damages for

the reconditioning of the cartons of olive oil.

*Caribbean Express, Inc.*, 802 F.Supp. 617 (D.P.R.1992) (citing *Birdsall, Inc. v. Tramore Trading Co. Inc.*, 771 F.Supp. 1193, 1197 (S.D.Fla.1991)); *Fireman's Insurance Co.*, 349 F.Supp. at 958 ("the statute of limitations will not be interrupted by settlement conversations"). After all, a plaintiff cannot reasonably be misled into thinking a defendant will not contest timeliness merely because it has entered into settlement negotiations with the plaintiff.

## IV. Analysis

■ Malgor argues that CTE should be equitably estopped from raising the statute of limitations defense because CTE allegedly used settlement negotiations to lure Malgor into the limitations trap. Malgor makes much of a well-known case decided in this district in which the Court held that the carrier was equitably estopped from raising COGSA's statute of limitations defense. *Michelena & Co. v. American Export and Isbrandtsen Lines, Inc.*, 258 F.Supp. 479 (D.P.R.1966) (Cancio, J.). However, the *Michelena* holding has been of limited applicability. As its author wrote only a few years afterwards in a similar case,

> "[t]he *Michelena* case decided by this Judge is a unique case, departing from the above outline law, as admitted by the undersigned in his decision in *Michelena*, due to its unique circumstances.... While deciding on principles of equity forced by the admission on the part of the carrier to the misrepresentations, this court observed that the law seemed clear in that the period for the statute of limitations will not be interrupted by settlement conversations, thus recognizing that the case and the decision behind it was governed exclusively by the undoubtedly malicious misrepresentations of the carrier which were admitted for the purposes of the record."

*Fireman's Insurance Co.*, 349 F.Supp. at 958–59. Similarly, it has been stated that "[i]n *Michelena* ... this Court held that malicious representations by the carrier directed to divert the attention of the consignee away from filing a timely action until the time for suit elapses estops the carrier from asserting the statute of limitations defense.

The *Michelena* doctrine, however, is not applicable simply because the possibility of settlement was discussed or explored by the parties." *Hemis Trading Corp.*, 705 F.Supp. at 73–74.

The Court understands the doctrine of equitable estoppel to require something substantially beyond normal settlement discussions before equitable estoppel displaces COGSA's strong policy favoring strict application of the statute of limitations. Specifically, Malgor must show that CTE "falsely represented to him that the statute would be extended ... or that [CTE] would not assert the statute as a defense. [Malgor] would also have to show that he [reasonably] relied on this representation in failing to file suit within one year from delivery." *Mikinberg*, 988 F.2d at 331 (with additions in brackets).

In the case at hand Mr. Bayrón, as CTE's representative, did not engage in misleading behavior nor did he make misrepresentations. As noted above, during the conversations in June, Mr. Bayrón said he would inquire as to CTE's willingness to settle. In September, he communicated CTE's offer. When that offer was not accepted because Malgor sought compensation for both claims, Mr. Bayrón indicated that he did not have the authority to modify the offer, and that he would have to consult again with CTE. The Court notes that Malgor does not allege that he promised or somehow led Malgor to believe that CTE would, in fact, make a new settlement offer different from the offer extended in September. In sum, the Court detects no impropriety, and rejects the plaintiff's offer to find such, on the part of CTE in these negotiations.

Moreover, Malgor has not shown that it acted reasonably in letting the one-year term expire. Mr. Torres has stated in his affidavit that he understood Navieras' letter of April 16, 1993, as establishing that CTE would settle the claims. Unfortunately, Mr. Torres was not entitled to reach such a conclusion because, not being CTE's agent, Navieras has no authority to bind CTE. Malgor should have demanded a contractual extension of the limitations period, or made a protective filing when no settlement agree-

ment was reached prior to the expiration of the one-year statutory term.

The Court concludes that the undisputed material facts of this case are distinguishable from the ones in *Michelena*, 258 F.Supp. 479, in that they clearly fail to establish either that CTE acted maliciously or that Malgor acted reasonably in taking CTE's offer as an indication that it did not need to file suit within the COGSA one-year term. Accordingly, the complaint against CTE is hereby **dismissed with prejudice** because it was filed beyond the time limit set by COGSA. Furthermore, the bills of lading's Himalaya clauses exempted Navieras from any liability to Malgor and extended to Navieras all affirmative defenses enjoyed by CTE (see footnote 1); either way, the result is the same: the complaint against co-defendant Navieras must also be **dismissed with prejudice**. Judgment will be entered accordingly.

IT IS SO ORDERED.