Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| MIGUEL ROSA INTERNATIONAL TRADING, CORP.<br><br>*Apelante*<br><br>v.<br><br>AQUA GULF TRANSPORT INC., T/C/C AQUA GULF SERVICES, INC.; ANOVA MARINE INSURANCE SERVICES LLC.; ZIM INTEGRATED SHIPPING SERVICES, LTD.; PÉREZ Y CIA. DE PUERTO RICO, INC.; XYZ INSURANCE COMPANY; ABC CORP.; DEMANDADOS DESCONOCIDOS<br><br>*Apelados* | KLAN202400610 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV09370<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de septiembre de 2024.

Comparece ante nos Miguel Rosa International Trading Inc. (MRIT o parte apelante) mediante recurso de *apelación* y solicita que revoquemos dos Sentencias Parciales[1] emitidas el 30 de abril de 2024 y el 7 de mayo de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario)[2]. Mediante los referidos dictámenes, el TPI desestimó, con perjuicio, la causa de acción instada contra Aqua Gulf Transport, Inc. (Aqua Gulf) y ZIM Integrated Shipping Services Ltd (ZIM) (en conjunto, la parte apelada), por prescripción.

---
[1] Apéndice del recurso, págs. 45-55 y 56-60.
[2] Ambos dictámenes fueron notificados el 2 y 7 de mayo de 2024, respectivamente.

Número Identificador
SEN2024_____

Además, MRIT nos solicita la revisión de la *Resolución*[3] emitida y notificada el 28 de mayo de 2024 por el foro primario, a través de la cual declaró Sin Lugar la *Reconsideración de Resoluciones sobre Memorando de Costas de Aqua Gulf Transport Inc. y ZIM Integrated Shipping Services Ltd*[4], presentada por la parte apelante.

Por los fundamentos que exponemos a continuación, **confirmamos** las determinaciones apeladas.

## I.

El 4 de octubre de 2023, MRIT presentó *Demanda*[5] sobre incumplimiento de contrato y daños y perjuicios contra Aqua Gulf, ZIM y otros. En síntesis, alegó que se dedicaba a la importación de bienes a Puerto Rico. Como parte de ello, sostuvo que adquirió un cargamento de hojaldre, proveniente de Hidalgo, México[6]. El transporte del hojaldre a Puerto Rico estaría a cargo de la parte apelada[7]. Adujo que la barcaza que transportó el producto salió de Veracruz, México, y atravesó todos los controles de calidad internos, así que, el producto se hallaba en perfectas condiciones[8]. Reclamó que, el 28 de enero de 2022, el contenedor fue recibido en Puerto Rico. Al recibirlo, la mercancía estaba congelada y lucía en buen estado.

Así las cosas, MRIT procedió a distribuir el producto a los compradores. No obstante, comenzó a recibir quejas del producto. Manifestó, que el hojaldre "no se estaba comportando como suele hacerlo… [y] se hundía"[9]. MRIT sostuvo que el cargamento de hojaldre requería que se mantuviese a una temperatura de -20

---

[3] Apéndice del recurso, pág. 121.
[4] Apéndice del recurso, págs. 111-120.
[5] Apéndice del recurso, págs. 1-8.
[6] Precisamos que de los documentos que obran del expediente no surge la fecha en que MRIT adquirió el hojaldre.
[7] De las alegaciones de la parte apelante, surge que ZIM fue subcontratada por Aqua Gulf para realizar el transporte del hojaldre.
[8] La barcaza salió de México el 16 de enero de 2022. Véase págs. 3 y 15 del recurso.
[9] Apéndice del recurso, pág. 4.

grados Celsius durante su transporte en alta mar. Indicó que la parte apelada incumplió con ello, por lo que el hojaldre se deterioró.

Cónsono con lo anterior, el 10 de marzo de 2022, realizó una reclamación ante Aqua Gulf, pero tanto esta, como la compañía aseguradora, ANOVA, ignoraron la misma por más de nueve (9) meses; y, posteriormente, la reclamación fue cerrada. Asimismo, MRIT alegó en la *Demanda* que, el 21 de noviembre de 2022, había presentado una reclamación extrajudicial ante Aqua Gulf, mas esta denegó sus reclamos. Sostuvo, además, que la parte apelada se negó a proveer evidencia sobre la temperatura del congelador, en específico, la información que contenía el monitor de temperatura del contenedor donde se transportó la mercancía.

Cabe señalar que, MRIT manifestó que no fue hasta que presentó su reclamación extrajudicial que tomó conocimiento de la identidad de la aseguradora y de que ZIM había sido el transportista contratado por Aqua Gulf.

Consecuente a todo lo anterior, MRIT esgrimió que la parte apelada venía obligada a responder tanto por la pérdida de la mercancía como por los daños resultantes de ello. La parte apelante estimó la totalidad de los daños en más de $300,000.00.

El 15 de diciembre de 2023, Aqua Gulf instó *Moción de Sentencia Parcial por las Alegaciones*[10]. En esencia, arguyó que la causa de acción estaba prescrita. Adujo que, el transporte del hojaldre se pactó mediante el Conocimiento de Embarque Núm. 783119 (*Bill of Lading*), y manifestó que, entre los términos y condiciones de este, se incorporó la aplicación de la Ley Federal de Transporte de Bienes por Mar (COGSA, por sus siglas en inglés)[11]. Manifestó que entre las disposiciones de COGSA, se establece un término prescriptivo de un (1) año para presentar una acción judicial

---

[10] Apéndice del recurso, págs. 9-16.
[11] 46 U.S.C. secc. 30701 *et seq.*

contra un porteador, contados a partir de la entrega de la mercancía. Toda vez que la mercancía fue entregada el 28 de enero de 2022, y la *Demanda* se presentó el 4 de octubre de 2023, razonó que la reclamación estaba prescrita. Precisó, además, que el término de un año (1) era uno de caducidad, por lo que no admitía interrupción alguna. A tenor, solicitó la desestimación de la *Demanda* y la imposición de costas, gastos y honorarios de abogados.

El 18 de diciembre de 2023, ZIM presentó *Moción Uni[é]ndonos a la Moción de Sentencia Parcial por las Alegaciones presentada por Aqua Gulf Transport Inc. y Solicitud de Desestimación con Perjuicio*[12]. A través de esta, ZIM adoptó por referencia la moción presentada por Aqua Gulf, y las incorporó a su defensa.

El 31 de enero de 2024, MRIT se opuso a la moción dispositiva mediante *Oposición a Mociones de Sentencia Parcial por las Alegaciones*[13]. A grandes rasgos, adujo que Aqua Gulf nunca le entregó la segunda página del *Bill of Lading*, por lo que no consintió el contenido de esta, donde se encontraban las disposiciones de COGSA. Expuso que, Aqua Gulf nunca le informó que contaba con un término de un (1) año para presentar cualquier acción ante el tribunal.

De otro lado, sostuvo que ZIM fue traída al pleito, puesto que había sido subcontratada por Aqua Gulf para llevar a cabo el transporte del hojaldre, por lo que era parte indispensable. Añadió, que ZIM era la entidad responsable de proveer la grabación del reloj de temperatura del contenedor. Finalmente, indicó que existían hechos sustanciales en controversia y alegaciones no relacionadas al *Bill of Lading* que impedían que se dictara sentencia por las alegaciones. Sobre esto, manifestó que Aqua Gulf no le notificó sobre

---

[12] Apéndice del recurso, págs. 17-18.
[13] Apéndice del recurso, págs. 19-29.

la información que había requerido la asegurada para procesar la reclamación, razón por la cual esta fue cerrada.

El 16 de febrero de 2024, Aqua Gulf presentó *Réplica a "Oposición a Mociones de Sentencia Parcial por las Alegaciones"*[14]. En lo pertinente, adujo que la primera página del *Bill of Lading* alertaba expresamente que sus términos y condiciones se extendían más allá de lo que recogía la parte frontal del documento. En lo específico, el texto incluido en la primera página del *Bill of Lading* leía como sigue:

> Received by Carrier for Shipment by ocean vessel between port of loading and port discharge, and for arrangement or procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever is applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to accepting this Bill of Lading[15].

Afirmó que ello constituía lo que se conoce en derecho marítimo como un *Short Form Bill of Lading*, y que el mismo incorporaba por referencia el término de caducidad de un (1) año establecido por COGSA.

De otro lado, Aqua Gulf esgrimió que no tenía obligación en ley de alertar a la parte apelante sobre el término prescriptivo de un (1) año para presentar un pleito ante los tribunales. Expuso que, al momento de la reclamación extrajudicial, MRIT contaba con representación legal, por lo que no podía descargar su responsabilidad en Aqua Gulf.

Por último, sostuvo que la controversia en torno al contrato de seguros –la cual forma parte de las alegaciones no relacionadas al *Bill of Lading*– le concernía únicamente a la compañía aseguradora y al asegurado, entiéndase, ANOVA y MRIT.

---

[14] *Apéndice del recurso*, págs. 30-35.
[15] *Apéndice del recurso*, pág. 15.

Posteriormente, el 21 de febrero de 2024, MRIT instó *D[ú]plica a "Réplica a Oposición a Mociones de Sentencia Parcial por las Alegaciones"*[16]. Sobre el asunto del *Bill of Lading*, esgrimió que Aqua Gulf pretendía que el Tribunal legitimara "que la demandante aceptó unos términos y condiciones que nunca examinó"[17]. Añadió que el argumento de Aqua Gulf, en cuanto a que la primera página del contrato indicaba que existían términos adicionales, ignoraba que la existencia de un contrato exigía la concurrencia de consentimiento, objeto y causa. Indicó que el incumplimiento con cualquiera de ellos, "específicamente con el de consentimiento"[18], provocaba la nulidad del contrato.

Sobre el asunto relacionado al contrato de seguros, insistió en que Aqua Gulf no le informó sobre el requerimiento de información y documentos exigidos por ANOVA, y ZIM se había negado a proveer la grabación del reloj de temperatura del contenedor en el que transportaron la mercancía.

En la misma fecha, Aqua Gulf presentó *Réplica Suplementaria a "Oposición a Mociones de Sentencia Parcial por las Alegaciones"*[19], sostuvo que, COGSA aplicaba *ex proprio vigore* a la controversia. Así pues, manifestó que aun cuando las partes no hubiesen pactado expresamente su implementación, igualmente aplicaba sobre el *Bill of Lading*.

Atendidos los escritos de las partes, el 30 de abril de 2024, notificada el 2 de mayo de 2024[20], el foro primario emitió *Sentencia Parcial*[21]. En virtud de esta, declaró Ha Lugar la *Moción de Sentencia Parcial por las Alegaciones* presentada por Aqua Gulf y, consecuentemente, desestimó la demanda con perjuicio. El foro

---

[16] Apéndice del recurso, págs. 36-40.
[17] Apéndice del recurso, pág. 37.
[18] *Íd.*
[19] Apéndice del recurso, págs. 41-44.
[20] Entrada #35 de SUMAC.
[21] Apéndice del recurso, págs. 45-55.

primario concluyó que COGSA aplicaba *ex propio vigore* en los casos de comercio marítimo en el extranjero, por lo que la incorporación expresa no era necesaria para su aplicación. Expuso que ello hacía impertinente cualquier alegación de MRIT relacionada a la falta de consentimiento para la aplicación de COGSA. Como corolario de lo anterior, el TPI razonó lo siguiente:

> [A]l estar regulado el conocimiento de embarque que nos incumbe por la ley federal C.O.G.S.A., aplica a la controversia de autos el término estatutario de caducidad de un (1) año para exigirle responsabilidad al porteador por cualquier pérdida o daño del producto. Es norma reiterada en nuestra jurisdicción que los términos de caducidad no admiten interrupción. Por lo que los reclamos extrajudiciales ejecutados por la parte demandante no tuvieron efecto interruptor sobre el término estatutario de un (1) año dispuesto por la legislación aplicable. Dicho término de un (1) año comenzó a decursar una vez el producto le fue entregado a la parte demandante, entiéndase, el 28 de enero de 2022. Por lo tanto, la parte demandante tenía hasta el 28 de enero de 2023 para presentar su reclamación judicial, cosa que no hizo. Como consecuencia, la acción judicial de la parte demandante caducó por el mero lapso del término de un (1) año sin presentarse la Demanda[22].

Por otro lado, el TPI concluyó que los reclamos sobre el asunto del contrato de seguros con ANOVA no le eran oponibles a Aqua Gulf.

El TPI le impuso a MRIT el pago de gastos, costas y honorarios de abogado a favor de la parte apelada Aqua Gulf, de conformidad a la Regla 44.1 de las de Procedimiento Civil[23].

El 7 de mayo de 2024, el TPI emitió y notificó una segunda *Sentencia Parcial*[24], y desestimó, con perjuicio, la causa de acción contra ZIM. En resumidas cuentas, el foro primario resolvió que aun cuando MRIT pudiese demostrar que la mercancía se dañó durante el trayecto por la negligencia de ZIM, el derecho a reclamar había caducado. Esto, pues la demanda fue presentada fuera del término de caducidad de un (1) año que dispone COGSA.

---

[22] Apéndice del recurso, pág. 53.
[23] 32 LPRA Ap. V, R. 44.1.
[24] Apéndice del recurso, págs. 56-60.

Al día siguiente, el 8 de mayo de 2024, Aqua Gulf instó un *Memorando de Costas y Honorarios de Abogado*[25], en el que solicitó la cantidad de $15,004.64[26] por concepto de gastos y honorarios de abogado. Luego, el 13 de mayo de 2024, ZIM también presentó *Moción Memorando Costas y Honorarios de Abogado*[27], en el que reclamó la cantidad de $100.00 en concepto de costas, los gastos del sello de primera comparecencia y las fotocopias, y $1,602.00[28] en concepto de honorarios de abogado.

Inconforme, el 17 de mayo de 2024, MRIT presentó *Solicitud de Reconsideración de Sentencia Parcial*[29], en atención al dictamen emitido a favor de Aqua Gulf. De entrada, arguyó que Aqua Gulf presentó su moción para que se dictara sentencia por las alegaciones previo a instar su alegación responsiva, contrario a lo que exige la Regla 10.3 de Procedimiento Civil[30]. Añadió que el escrito presentado tampoco cumplía con la Regla 5.1 del mismo cuerpo reglamentario[31].

Ello, no obstante, MRIT manifestó que aun cuando Aqua Gulf hubiese presentado su moción dispositiva luego de haber contestado la *Demanda*, no procedía dictar sentencia parcial. Precisó que las partes en un contrato tenían la potestad de adoptar expresamente la aplicación de COGSA, por lo que Aqua Gulf pretendía inducir a error al Tribunal al exponer que esta aplicaba de manera automática a la controversia.

---

[25] Apéndice del recurso, págs. 123-127.
[26] El desglose de Costas y Honorarios de Abogados de Aqua Gulf es: Sellos de Rentas Internas/Asistencia Legal/ SUMAC $90.00, Fotocopias $56.50, Honorarios de abogado $14,400.00 e Investigación legal $458.14.
[27] Apéndice del recurso, págs. 61-62.
[28] El desglose de Costas y Honorarios de Abogados de ZIM es Sello de Primera Comparecencia $90.00, Fotocopias $10.00 y $1,602.80.
[29] Apéndice del recurso, págs. 63-80.
[30] 32 LPRA Ap. V, R. 10.3.
[31] La referida regla dispone como sigue:
Las alegaciones permitidas serán la demanda, la reconvención, la demanda contra coparte, la demanda contra tercero y sus respectivas contestaciones. No se permitirá ninguna otra alegación, pero el tribunal podrá exigir que se presente una réplica a una contestación o a una contestación de tercero. 32 LPRA Ap. V, R. 5.1.

Por otra parte, resaltó que nunca acordó con Aqua Gulf lo establecido en la segunda página del *Bill of Lading*, puesto que la referida página no le fue entregada. Subrayó que Aqua Gulf nunca le proveyó la información de la compañía de seguros, ni le orientó sobre el término de un (1) año para presentar una reclamación ante el tribunal.

Así las cosas, el 20 de mayo de 2024, la parte apelante presentó *Oposición a Memorando de Costas*[32] presentado por Aqua Gulf. En resumidas cuentas, sostuvo que la partida de costas no procedía, ya que los gastos incurridos por Aqua Gulf eran producto de sus propios actos debido a su incumplimiento contractual. En cuanto a los honorarios de abogado, alegó que estos no procedían puesto que resultaba evidente que no había incurrido en temeridad. Añadió que el TPI no realizó tal determinación en su sentencia.

El 22 de mayo de 2024, el TPI emitió cuatro (4) dictámenes. En virtud del primero, relacionado al memorando de costas presentado por Aqua Gulf, el foro primario concedió la cantidad de $146.50 en concepto de costas, y $2,500 por honorarios de abogado[33]. Mediante el segundo, referente a las cuantías reclamadas por ZIM, el TPI concedió la cantidad de $100.00 por costas, y $400.00 por honorarios de abogados[34]. Finalmente, a través de los últimos dos (2) dictámenes, el TPI declaró Sin Lugar tanto la solicitud de reconsideración como la oposición al memorando de costas de Aqua Gulf, ambos presentados por MRIT[35].

También el 22 de mayo de 2024, la parte apelante instó *Solicitud de Reconsideración de Sentencia Parcial*[36], respecto al dictamen que desestimó la causa de acción contra ZIM. A grandes

---

[32] Apéndice del recurso, págs. 81-88.
[33] Apéndice del recurso, págs. 89-90.
[34] Apéndice del recurso, pág. 91.
[35] Apéndice del recurso, págs. 92 y 93.
[36] Apéndice del recurso, págs. 94-110.

rasgos, MRIT reprodujo los argumentos esbozados en la solicitud de reconsideración previamente presentada.

El 23 de mayo de 2024, MRIT presentó escrito intitulado *Reconsideración de Resoluciones sobre Memorando de Costas de Aqua Gulf Transport Inc. y ZIM Integrated Shipping Services Ltd*[37]. Adujo que, aunque los gastos concedidos por el TPI eran necesarios y razonables –según lo exige el ordenamiento jurídico–, estos no procedían. Hizo hincapié en que los gastos incurridos por las partes apeladas eran producto de sus propios actos. Por otra parte, reafirmó que no procedía la imposición de honorarios de abogado puesto que el Tribunal no hizo ninguna determinación de temeridad en sus sentencias.

El 28 de mayo de 2024, el TPI declaró No Ha Lugar las dos (2) solicitudes de reconsideración reseñadas en los párrafos que anteceden[38].

En desacuerdo con el curso decisorio del foro primario, el 21 de junio de 2024, MRIT presentó el recurso de *Apelación* que nos ocupa y le imputó al TPI la comisión de los siguientes errores:

(1) ERRÓ EL TPI AL DICTAR SENTENCIA PARCIAL BASADA EN LA SOLICITUD DE SENTENCIA POR LAS ALEGACIONES PRESENTADA POR LA PARTE DEMANDADA-APELADA, AQUA GULF, POR NO CUMPLIRSE CON LOS REQUISITOS DISPUESTOS EN LAS REGLAS DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA.

(2) ERRÓ EL TPI AL IMPONER A LA PARTE DEMANDANTE-APELANTE EL PAGO DE COSTAS Y HONORARIOS DE ABOGADO A LA PARTE DEMANDADA-APELADA, AQUA GULF.

(3) ERRÓ EL TPI AL DICTAR SENTENCIA PARCIAL BASADA EN LA SOLICITUD DE SENTENCIA POR LAS ALEGACIONES PRESENTADA POR LA PARTE DEMANDADA-APELADA, ZIM INTEGRATED SHIPPING SERVICES, LTD., POR NO CUMPLIRSE CON LOS REQUISITOS DISPUESTOS EN LAS REGLAS DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA.

---

[37] Apéndice del recurso, págs. 111-120.
[38] Apéndice del recurso, pág. 121 y 122.

(4) ERRÓ EL TPI AL IMPONER A LA PARTE DEMANDANTE-APELANTE EL PAGO DE COSTAS Y HONORARIOS DE ABOGADO A LA PARTE DEMANDADA-APELADA, ZIM INTEGRATED SHIPPING SERVICES LTD.

(5) ERRÓ EL TPI AL DESESTIMAR CON PERJUICIO LA CAUSA DE ACCIÓN EN CONTRA DE AQUA GULF Y ZIM, A PESAR DE QUE EXISTE CONTROVERSIA ENTRE LOS HECHOS MATERIALES Y ESENCIALES DE LA RECLAMACIÓN DE AUTOS.

El 22 de julio de 2024, Aqua Gulf compareció mediante *Alegato de Parte Apelada Aqua Gulf*. Luego, el 24 de julio de 2024, ZIM presentó *Alegato de Parte Apelada ZIM Integrated Shipping Services LTD*.

Perfeccionado el recurso, estamos en posición de resolver.

**II.**

**-A-**

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[39], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[40]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
(5) dejar de exponer una reclamación que justifique la concesión de un remedio;
(6) dejar de acumular una parte indispensable[41].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra*, los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[42]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más

---

[39] 32 LPRA Ap. V, R. 10.2.
[40] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).
[41] *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016).
[42] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra.*

favorable posible para la parte demandante"[43]. Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y 'únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[44]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[45].

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolver toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'"[46]. Asimismo, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de su análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[47].

**-B-**

La Regla 10.3 de Procedimiento Civil, *supra*, provee para que cualquier parte pueda solicitar al tribunal que se dicte sentencia por las alegaciones, luego de que se haya contestado la demanda y cualquier otra alegación que requiera contestación[48]. Esto, siempre

---

[43] *Íd.,* pág. 429.
[44] *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.
[45] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*.
[46] *Íd.*, citando a *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).
[47] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.
[48] *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 102 (2002).

y cuando no se afecte la solución rápida de los procedimientos[49]. En específico, la referida disposición esboza lo siguiente:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que se dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3. Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36, y todas las partes tendrán oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla.

Al solicitar que se dicte sentencia por las alegaciones, no deben existir controversias sustanciales de hechos, de modo que la celebración del juicio en su fondo para recibir o dilucidar prueba sea innecesaria[50].

Al momento en que una parte solicite que se dicte sentencia por las alegaciones, todos los hechos bien alegados en la demanda se estimarán admitidos[51]. No obstante, tal aceptación es únicamente para propósitos de la moción y no constituyen una renuncia a cualquier controversia que deba dilucidarse a través de prueba en el juicio[52].

El estándar aplicable al momento de resolver una moción para que se dicte sentencia por las alegaciones es idéntico al que se utiliza ante una moción de desestimación fundamentada en que la demanda deja de exponer una reclamación que justifique la concesión de un remedio[53]. "Cualquier distinción entre una y otra moción es meramente semántica, pues el tribunal tiene que aplicarles a ambas el mismo estándar al considerarlas"[54]. Así pues, las alegaciones de la demanda se evaluarán liberalmente y de la

---

[49] *Íd.*
[50] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871, 883-884 (2023); *Montañez v. Hosp. Metropolitano, supra.*
[51] *Montañez v. Hosp. Metropolitano, supra*, págs. 103-104.
[52] *Íd.*, pág. 103; *W.M.M., P.F.M. et al. v. Colegio et al., supra*, pág. 884.
[53] *Montañez v. Hosp. Metropolitano, supra*, págs. 103-104.
[54] *Íd.*, pág. 104.

manera más favorable al promovido[55]. La acción se desestimará únicamente si el promovente no tiene derecho a remedio alguno bajo cualesquiera hechos que pueda probar en un juicio[56].

**-C-**

El transporte marítimo de bienes está reglamentado por el *Carriage of Goods by Sea Act* (COGSA)[57]. Particularmente, COGSA regula el transporte de bienes por mar desde la carga de estos en el navío hasta su descargo[58]. La aplicabilidad de este estatuto federal opera ***ex propio vigore*** cuando se trata de comercio naval con el extranjero[59]. Es decir, COGSA rige por sus propios términos en casos de transporte marítimo entre Estados Unidos y un puerto extranjero[60]. Así pues, COGSA aplica a todos los *Bill of Lading* o documentos similares que demuestren la contratación de transporte de un cargamento de bienes a través del mar, desde un puerto de Estados Unidos con destino a un puerto foráneo, y viceversa[61]. En detalle, COGSA, *supra*, dispone lo siguiente:

> Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter[62].

En lo pertinente a la controversia ante nos, COGSA, *supra*, establece un término de caducidad de un (1) año para la presentación de reclamaciones judiciales por los daños o la pérdida de la mercancía en cuestión, durante el transporte de esta[63]. Dicho término comienza a decursar a partir de la fecha en que se realizó o se debió haber realizado la entrega de la mercancía.

---

[55] *W.M.M., P.F.M. et al. v. Colegio et al.*, *supra.*
[56] *Montañez v. Hosp. Metropolitano*, *supra*, pág. 105.
[57] 46 U.S.C. § 30701 *et seq.*
[58] *Archilla v. Smyth Worldwide Movers*, 106 DPR 538, 543 (1977).
[59] *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010).
[60] *R & G Engineering v. Transcontainer Transport*, 213 F. Supp. 2d 72 (D.P.R 2002).
[61] 46 U.S.C. § 1301 (e).
[62] *Íd.*
[63] 46 U.S.C. § 1303 (6). En lo específico, el estatuto federal dispone lo siguiente:
In any event the carrier and ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.
Véase, además, *R & G Engineering v. Transcontainer Transport, supra; Malgor & Co. v. Compañía Trasatlántica Española*, 931 F. Supp. 122 (DPR 1996).

Los tribunales han interpretado dicho término de un (1) año como uno de caducidad, por lo que el mismo no admite prórroga ni interrupción[64].

**-D-**

La doctrina del campo ocupado surge de la Cláusula de Supremacía establecida en la Constitución Federal, la cual dispone lo siguiente:

> *This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; […] shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwith-standing*[65].

Ahora bien, la doctrina del campo ocupado *evita los conflictos regulatorios entre dos gobiernos, fomentando la uniformidad*[66]. *El efecto de este precepto es que el Congreso puede ocupar el campo sobre un asunto federal y excluir la regulación federal*[67].

La jurisdicción exclusiva del Gobierno Federal, en los asuntos federales, puede surgir cuando el Congreso lo haya dispuesto expresamente o cuando la clara intención de la ley sea privar de jurisdicción a los tribunales estatales[68]. Además, se entiende que el campo esté ocupado "en aquellas circunstancias en las cuales el interés o propósito federal es tan dominante que no debe existir reglamentación estatal, o, cuando esta podría producir un resultado incompatible con los objetivos federales en determinada área". *Íd.* Conforme a esta doctrina, cualquier ley estatal que contravenga una ley federal es nula[69].

**-E-**

---

[64] *Malgor & Co. v. Compañía Trasatlántica Española, supra*; *Hemis Trading Corp. v. Navieras de Puerto Rico*, 705 F. Supp. 72 (DPR 1989).
[65] Art. VI. Const. EE.UU., LPRA, Tomo 1.
[66] *Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina y otros,* 210 DPR 306, (2022)*, Mun. de Peñuelas v. Ecosystems, Inc.,* 197 DPR 5, 14 (2016).
[67] *Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina y otros, supra.*
[68] *Íd.*
[69] *Mun. de Peñuelas v. Ecosystems, Inc.,* supra, pág. 15.

Los términos pueden ser de prescripción o de caducidad y la diferencia entre estos es que el término de prescripción se puede interrumpir, mientras que el de caducidad no[70]. De este modo, se ha definido la caducidad como la decadencia de un derecho o su pérdida por no haber cumplido, en el plazo determinado, la formalidad o condición exigida por la ley[71].

Contrario a la prescripción, en la caducidad, se toma en cuenta el modo automático y directo de operar la extinción, no se dan causas de interrupción y suspensión. Por esto, siempre que existe un término de caducidad se extingue el derecho a la causa de acción con el mero transcurso del tiempo[72].

**-F-**

En nuestro ordenamiento jurídico, la concesión de costas está gobernada por la Regla 44.1 de las de Procedimiento Civil, *supra*. A través de dicha norma, se permite el reembolso de los gastos necesarios y razonables en los que tuvo que incurrir la parte prevaleciente del pleito en la tramitación de este[73]. Así, se restituye a dicha parte lo que perdió por hacer valer su derecho al ser obligada a litigar y a su vez, se penaliza "la litigación inmeritoria, temeraria, o viciosa [...]"[74]. De modo que, su derecho no queda "menguado por los gastos que tuvo que incurrir sin su culpa y por culpa del adversario"[75].

Una vez se reclaman, la imposición de costas a favor de la parte victoriosa es mandatoria[76]. Ahora bien, no todos los gastos del

---

[70] *Díaz Santiago v. International Textiles*, 195 DPR 862, 868 (2016).
[71] *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 478 (2019).
[72] *Íd.*
[73] *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 934 (2012); *Auto Servi, Inc. v. E.L.A.*, 142 DPR 321, 326 (1997); *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456, 460 (1992).
[74] *Auto Servi, Inc. v. E.L.A.*, *supra*, pág. 327; *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245, 253 (1963).
[75] *Maderas Tratadas v. Sun Alliance et al.*, *supra*; *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, *supra*; *Garriga, Jr. v. Tribunal Superior, supra*.
[76] *Maderas Tratadas v. Sun Alliance et al.*, *supra*; *Auto Servi, Inc. v. E.L.A.*, *supra*, pág. 326.

litigio son recobrables[77]. El tribunal goza de amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados[78]. El criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra"[79].

-G-

De otro lado, la misma Regla 44.1 de Procedimiento Civil, *supra*, regula lo concerniente a la concesión de honorarios de abogados. La misma autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado procede con temeridad o frivolidad[80]. De esta manera, la imposición o concesión de honorarios de abogado no procede en todos los casos. Depende, pues, de la determinación discrecional que haga el tribunal en torno a si la parte perdidosa o su abogado, actuaron con temeridad o frivolidad, o de la existencia de una ley especial[81]. Nuestro Alto Foro ha puntualizado que para reclamar honorarios de abogados es *imprescindible* que se haya actuado con temeridad durante el trámite judicial[82].

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables[83]. Sobre este particular, nuestro más Alto Foro ha expresado también que "[l]a temeridad es una actitud que se

---

[77] *Maderas Tratadas v. Sun Alliance et al., supra*; *J.T.P. Dev. Corp. v. Majestic Realty Corp., supra.*
[78] *Maderas Tratadas v. Sun Alliance et al., supra,* pág. 935; *Auto Servi, Inc. v. E.L.A., supra.*
[79] *Íd.*
[80] *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 192 (2022); *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145 (2022).
[81] *Íd.*
[82] *SLG González-Figueroa v. SLG et al., supra,* pág. 148.
[83] *Íd.*; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010).

proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia"[84].

Por otro lado, la frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna"[85]. Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo[86].

El propósito de la imposición de honorarios de abogado en casos de temeridad es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito"[87].

Además, la imposición de honorarios de abogado tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte[88]. Nuestro más Alto Foro ha dispuesto que, la facultad de imponer honorarios de abogados es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a los litigantes de la dilación y los gastos innecesarios[89].

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que éste

---

[84] *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).
[85] *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999).
[86] *Íd.*
[87] *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010); *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193; *SLG González-Figueroa v. SLG et al., supra*, págs. 148-149; *Fernández v. San Juan Cement Co.*, Inc., 118 DPR 713, 718 (1987).
[88] *Fernández v. San Juan Cement Co., Inc., supra*, págs. 718-719.
[89] *SLG González-Figueroa v. SLG et al., supra*, pág. 149.

ha abusado de su discreción[90]. Tampoco será variada la partida concedida a menos que resulte ser excesiva o exigua[91].

Por último, cabe destacar que no es necesario un pronunciamiento expreso de temeridad para la imposición de honorarios de abogado[92]. El Tribunal Supremo ha resuelto que aun cuando no se haya determinado expresamente que un litigante actuó temerariamente, la declaración en la sentencia condenando a dicho pago presupone que el tribunal consideró temeraria a la parte así condenada[93].

### III.

Confrontados los hechos y trámites procesales con la normativa jurídica aplicable, procedemos a resolver si en el caso de autos aplica la COGSA. Adelantamos que, no es necesario la discusión de los errores 1, 3 y 5, luego que se adjudique la aplicabilidad o no de COGSA.

En síntesis, la parte apelante aduce que, incide el TPI al declarar Con Lugar la *Moción de Sentencia Parcial por las Alegaciones*, instada por Aqua Gulf y a la que se unió ZIM, por entender que la misma no fue presentada conforme lo exige nuestro ordenamiento jurídico. Alega que, la misma se insta previo a la presentación de una alegación responsiva, según dispone la Regla 10.3 de Procedimiento Civil, *supra*.

Por otra parte, Aqua Gulf[94] argumenta que el TPI no incide en error porque no tenía discreción y estaba obligado en aplicar a la COGSA por la Cláusula de Supremacía de la Constitución de Estados Unidos y de la Ley de Relaciones Federales[95].

---

[90] *Pérez Rodríguez v. López Rodríguez, supra*; *SLG González-Figueroa v. SLG et al., supra*, pág. 150.
[91] *Feliciano Polanco v. Feliciano González*, 147 DPR 722, 728-729 (1999).
[92] *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 40 (1962); *Rodríguez v. Alcover*, 78 DPR 822, 826 (1955); *Vélez v. Ríos*, 76 DPR 860, 868 (1954).
[93] *Íd.* Véase, además, *SLG González-Figueroa v. SLG et al., supra*, pág. 153.
[94] ZIM se unió a las alegaciones de Aqua Gulf.
[95] Const de EE. UU., art VI; *Leon v Transconex, Inc.* 119 DPR 102, 115 (1987).

Tras un examen minucioso del expediente, hemos tomado constancia de que, en efecto, la *Moción de Sentencia Parcial por las Alegaciones* instada por Aqua Gulf fue presentada antes de la contestación de la *Demanda*. Asimismo, ZIM se unió a esta sin haber presentado su alegación responsiva. Ello, tal y como expone la parte apelante, resulta contrario a las disposiciones de la Regla 10.3 de Procedimiento Civil, *supra*, la cual exige que una moción para que se dicte sentencia por las alegaciones se presente luego de haberse contestado la demanda[96].

Ahora bien, en nuestro sistema judicial es norma trillada que "el nombre no hace la cosa"[97]. De igual forma, se ha resuelto que la distinción entre una moción presentada al amparo de la Regla 10.3 de Procedimiento Civil, *supra*, y otra instada bajo la Regla 10.2 del mismo cuerpo reglamentario, *supra*, "es meramente semántica, pues el tribunal tiene que aplicarles a ambas el mismo estándar al considerarlas"[98]. Así pues, el estándar que debe utilizar el tribunal al momento de resolver una moción presentada al amparo de la Regla 10.3 de Procedimiento Civil, *supra*, es análogo al estándar aplicable para atender una moción de desestimación fundamentada en que la demanda deja de exponer una reclamación que justifique la concesión de un remedio[99].

Al evaluar cualquiera de estas mociones, los tribunales deben tomar como ciertos todos los hechos bien alegados en la demanda[100]. Tales alegaciones deberán evaluarse liberalmente y de la manera más favorable al promovido[101]. La desestimación procederá únicamente si resulta evidente que el promovente no tiene

---

[96] 32 LPRA Ap. V, R. 10.3.
[97] *JMG Investment v. ELA et al*, 203 DPR 708, 719 (2019).
[98] *Montañez v. Hosp. Metropolitano, supra*, pág. 104.
[99] *Íd.*, págs. 103-104.
[100] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra*, pág. 428.
[101] *Íd.,* pág. 429; *W.M.M., P.F.M. et al. v. Colegio et al., supra*.

derecho a remedio alguno bajo cualesquiera hechos que pueda probar en un juicio[102].

Al examinar los hechos del presente caso bajo el estándar antes expuesto, coincidimos con la apreciación del TPI en cuanto a que la parte apelante no cuenta con remedio alguno, por lo que procede la desestimación de la *Demanda*. Veamos.

Nuestro Tribunal Supremo ha dispuesto que, e*n estos casos de naturaleza marítima aplica el Derecho marítimo federal, según rige en la jurisdicción de Puerto Rico*[103]. Así pues, estamos de acuerdo con el foro primario en que las disposiciones de COGSA y su término de caducidad para presentar una causa de acción son aplicables a los hechos ante nuestra consideración. La COGSA fija un término de un (1) año para ejercitar un derecho y/o acción judicial. Por tal razón, una vez transcurrido el término, la parte apelante quedó impedida de ejercer su derecho.

Establecido lo anterior, reiteramos que el término de un (1) año comenzó a decursar una vez el producto le fue entregado a la parte apelante, entiéndase, el 28 de enero de 2022. Por lo tanto, la parte apelante tenía hasta el 28 de enero de 2023 para presentar su reclamación, no obstante, instó su requerimiento judicial el 4 de octubre de 2023, o sea, doscientos cuarenta y nueve (249) días después de finalizar el término de un (1) año de caducidad.

Habida cuenta del cuadro procesal y fáctico reseñado, sostenemos lo resuelto por el TPI y procede confirmar al foro primario al aplicar el término de caducidad provisto por COGSA.

En los errores dos (2) y cuatro (4), MRIT sostiene que el foro primario se equivocó al imponerle el pago de costas y honorarios de abogado a favor de ZIM y Aqua Gulf. A grandes rasgos, la parte

---

[102] *Montañez v. Hosp. Metropolitano, supra*, pág. 105; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 429.
[103] *León v. Transconex Inc.* 119 DPR 102, 113.

apelante aduce que no procede el pago de las costas, puesto que la causa de acción presentada no es frívola. Mientras que, sobre los honorarios de abogado, alega que el TPI no realizó una determinación expresa de temeridad, por lo que tampoco procede su imposición. Insiste en que los gastos incurridos por la parte apelada es producto de sus propios actos.

Según expusimos, el tribunal sentenciador debe ejercer su **discreción** al conceder las costas, al evaluar la razonabilidad de los gastos y al determinar la necesidad de los mismos[104]. De igual forma, el Tribunal goza de **discreción** para imponer honorarios de abogado por temeridad[105].

Evaluado el expediente en su totalidad, determinamos que el TPI evaluó los memorandos de costas presentados por Aqua Gulf y ZIM, y ejerció su discreción en conceder y rechazar partidas. Del expediente no surge que el foro primario haya actuado con prejuicio, parcialidad o abuso de discreción al momento de conceder las referidas partidas.

Con relación a las partidas de honorarios, cabe señalar que, si bien es cierto que el TPI no realizó una determinación expresa de temeridad en sus dictámenes, ello no es necesario para que proceda la imposición de honorarios de abogado. Recordemos que, la declaración en la sentencia sobre dicho pago presupone que el tribunal consideró temeraria a la parte así condenada[106].

Toda vez que la facultad de imponer costas y honorarios de abogado por temeridad es discrecional, y no observamos que el TPI haya abusado de su discreción, no intervendremos con su apreciación. Por tanto, validamos su determinación y concluimos que los errores dos (2) y cuatro (4) no fueron cometidos.

---

[104] *Maderas Tratadas v. Sun Alliance et al.*, *supra*; *Auto Servi, Inc. v. E.L.A.*, *supra*.
[105] *Pérez Rodríguez v. López Rodríguez*, *supra*; *SLG González-Figueroa v. SLG et al.*, *supra*, pág. 150.
[106] *Montañez Cruz v. Metropolitan Cons. Corp.*, *supra*; *Rodríguez v. Alcover*, *supra*; *Vélez v. Ríos*, *supra*.

**IV.**

Por los fundamentos expuestos, **confirmamos** los dictámenes recurridos.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones